LARSON, WAR ASSETS ADMINISTRATOR AND SURPLUS PROPERTY ADMINISTRATOR, v. DOMESTIC AND FOREIGN COMMERCE CORP.

No. 31. Argued November 12, 1948.—Decided June 27, 1949.

*Assistant Attorney General Morison* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Paul A. Sweeney* and *Oscar H. Davis.*

*T. Peter Ansberry* argued the cause for respondent. With him on the brief were *Stephen J. McMahon, Jr.* and *Seth W. Richardson.*

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

This suit was brought in the United States District Court for the District of Columbia by the Domestic & Foreign Commerce Corporation against Robert M. Littlejohn, the then head of the War Assets Administration.[1] The complaint alleged that the Administration had sold certain surplus coal to the plaintiff; that the Administrator refused to deliver the coal but, on the contrary, had entered into a new contract to sell it to others. The prayer was for an injunction prohibiting the Administrator from selling or delivering the coal to anyone other than the plaintiff and for a declaration that the sale to the plaintiff was valid and the sale to the second purchaser invalid.

A temporary restraining order was issued *ex parte*. At the subsequent hearing on the issuance of a preliminary injunction, the defendant moved to dismiss the complaint on the ground, among others, that the court did not have jurisdiction because the suit was one against the United

---

[1] Littlejohn resigned on November 28, 1947. On April 19, 1948, we granted the Government's motion to substitute his successor, Jess Larson, as petitioner here.

States. The motion was granted. The Court of Appeals reversed, holding that the jurisdictional capacity of the court depended on whether or not title to the coal had passed.[2] Since this was also one of the questions on the merits, it remanded the case for trial. We granted certiorari.[3] 333 U. S. 872.

The controversy on the merits concerns the interpretation to be given to the contract of sale. The War Assets Administration construed the contract as requiring the plaintiff to deposit funds to pay for the coal in advance and, when an unsatisfactory letter of credit was offered in place of a deposit, it considered that the contract was breached. The respondent, on the other hand, construed the contract as requiring payment only on delivery of the documents covering the coal shipment. In its view, it was not obliged to deposit any funds in advance of shipment and, therefore, had not breached the contract by failing to do so.

A second question, related to but different from the question of breach, was whether legal title to the coal had passed to the respondent when the contract was made. If the contract required the deposit of funds then, of course, title could not pass until the contract terms were complied with. If, on the other hand, the contract required payment only on the delivery of documents, a question remained as to whether title nevertheless passed at the time the contract was made.

Since these questions were not decided by the courts below we do not pass on them here. They are important only insofar as they illuminate the basis on which it

---

[2] 165 F. 2d 235 (1947).

[3] The judgment of the Court of Appeals was not a final one, but we considered it appropriate for review here since, in our view, the jurisdictional issue was "fundamental to the further conduct of the case." See *Land* v. *Dollar*, 330 U. S. 731, 734 (1947).

was claimed that the district court had jurisdiction over the suit. It was not alleged that the contract for. the sale of the coal was a contract with the officer personally.[4] The basis of the action, on the contrary, was that a contract had been entered into with the United States. Nor was it claimed that the Administrator had any personal interest in this coal or, indeed, that he himself had taken any wrongful action. The complaint was directed against him because of his official function as chief of the War Assets Administration.[5] It asked for an injunction against him in that capacity, and against "his agents, assistants, deputies and employees and all persons acting or assuming to act under their direction." The relief sought was, in short, relief against the Administration for wrongs allegedly committed by subordinate officials in that Administration. The question presented to the courts below was whether such an injunction was barred by the sovereign's immunity from suit.

Before answering that question it is perhaps advisable to state clearly what is and what is not involved. There is not involved any question of the immunization of Government officers against responsibility for their wrongful actions. If those actions are such as to create a personal liability, whether sounding in tort or in contract, the fact that the officer is an instrumentality of the sovereign does not, of course, forbid a court from taking jurisdiction over a suit against him. *Sloan Shipyards* v. *U. S. Fleet Corp.*, 258 U. S. 549, 567 (1922). As was said in *Brady*

---

[4] Cf. *Sloan Shipyards* v. *U. S. Fleet Corp.*, 258 U. S. 549 (1922), where the question was whether a. corporate agency of the United States could be sued where it, not the United States, was the contractor.

[5] For this reason, there obviously was no objection to the substitution in this Court of the present Administrator for his predecessor, although all the actions complained of in the complaint were taken during the predecessor's administration.

v. *Roosevelt S. S. Co.,* 317 U. S. 575, 580 (1943), the principle that an agent is liable for his own torts "is an ancient one and applies even to certain acts of public officers or public instrumentalities." But the existence of a right to sue the officer is not the issue in this case. The issue here is whether this particular suit is not also, in effect, a suit against the sovereign. If it is, it must fail, whether or not the officer might otherwise be suable.

If the denomination of the party defendant by the plaintiff were the sole test of whether a suit was against the officer individually or against his principal, the sovereign, our task would be easy. Our decision then would be that the United States is not being sued here because it is not named as a party. This would be simple and would not leave room for controversy. But controversy there has been, in this field above all others, because it has long been established that the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign.[6] In a suit against the officer to recover damages for the agent's personal actions, that question is easily answered. The judgment sought will not require action by the sovereign or disturb the sovereign's property. There is, therefore, no jurisdictional difficulty.[7] The question becomes difficult

---

[6] *In re Ayers,* 123 U. S. 443 (1887). As was said in *Minnesota v. Hitchcock,* 185 U. S. 373, 387 (1902): ". . . . whether a suit is one against a State is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered . . . ."

[7] There are, of course, limitations on the right to recover damages from public officers. See *Gibson v. Reynolds,* 172 F. 2d 95 (1949); *Glass* v. *Ickes,* 117 F. 2d 273 (1940); Harper, *Law of Torts* (1933) § 298. These limitations are matters of substantive law, applicable in suits indubitably addressed to the officer, not the sovereign. They are not necessarily coincidental with the limitations on the court's jurisdiction to hear a suit directed against the sovereign. See Jen-

and the area of controversy is entered when the suit is not one for damages but for specific relief: i. e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when an agent's actions are restrained, the sovereign itself may, through him, be restrained. As indicated, this question does not arise because of any distinction between law and equity. It arises whenever suit is brought against an officer of the sovereign in which the relief sought from him is not compensation for an alleged wrong but, rather, the prevention or discontinuance, in rem, of the wrong. In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction.

The relief sought in this case was not the payment of damages by the individual defendant.[8] To the contrary,

---

nings, *Tort Liability of Administrative Officers*, 21 Minn. L. Rev. 263 (1937), and note the differing treatment accorded the claim for compensation and the claim for specific relief in *Belknap* v. *Schild*, 161 U. S. 10, 27 (1896).

[8] Whether such relief is obtainable from any Government officer on the basis of the facts set out in the complaint is, as stated, not the question here. But it may seriously be doubted whether damages could, in any event, be recovered from Jess Larson, the present War Assets Administrator, or from his predecessor, Robert M. Littlejohn. The complaint did not charge them with any personal wrongdoing nor even with knowledge of the alleged wrongdoing of their subordinates. Cf. *Robertson* v. *Sichel*, 127 U. S. 507, 515–516 (1888). Since the

it was asked that the court order the War Assets Administrator, his agents, assistants, deputies and employees and all persons acting under their direction, not to sell the coal involved and not to deliver it to anyone other than the respondent.[9] The district court held that this was relief against the sovereign and therefore dismissed the suit. We agree.

There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign. If the War Assets Administrator had completed a sale of his personal home, he presumably could be enjoined from later conveying it to a third person. On a similar theory, where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief. It is important to note

---

complaint did not ask for damages but for specific relief, the Administrator, in his official capacity, was, of course, a proper party. Cf. *Williams* v. *Fanning,* 332 U. S. 490 (1947).

[9] The complaint also asked for declaratory relief even more clearly directed at the sovereign. It was asked that the court declare that "the sale of this coal . . . is still valid and in effect." The Administrator, an agent for a disclosed principal, was not a party to the contract of sale. See 2 Restatement, Agency (1933) § 320. The request for an adjudication of the validity of the sale was thus, even in form, a request for an adjudication against the sovereign. Such a declaration of the rights of the respondent *vis-à-vis* the United States would clearly have been beyond the court's jurisdiction. See *Stanley* v. *Schwalby,* 162 U. S. 255 (1896). We do not rest our conclusion here on the request for such a declaration, since the district court could have granted only the injunctive relief requested.

that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient. And, since the jurisdiction of the court to hear the case may depend, as we have recently recognized,[10] upon the decision which it ultimately reaches on the merits, it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies.

A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional. Actions for *habeas corpus* against a warden and injunctions against the threatened enforcement of unconstitutional statutes are familiar examples of this type. Here, too, the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign. The only difference is that in this case the power has been conferred in form but the grant is lacking in substance because of its constitutional invalidity.

These two types have frequently been recognized by this Court as the only ones in which a restraint may be obtained against the conduct of Government officials. The rule was stated by Mr. Justice Hughes in *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 620 (1912), where he said: ". . . in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been

---

[10] *Land* v. *Dollar*, 330 U. S. 731, 739 (1947). Since jurisdiction in this type of case does rest on the decision on the merits there can be no question that dismissal of a suit in which "the alleged claim under the Constitution or federal statutes clearly appears to be . . . made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous" would be dismissal for lack of jurisdiction. See *Bell* v. *Hood*, 327 U. S. 678, 682–683 (1946).

applied with respect to state officers seeking to enforce unconstitutional enactments.  [Citing cases.]  And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred." [11]

It is not contended by the respondent that the present case falls within either of these categories.  There was no claim made that the Administrator and his agents, etc., were acting unconstitutionally or pursuant to an unconstitutional grant of power.  Nor was there any allegation of a limitation on the Administrator's delegated power to refuse shipment in cases in which he believed the United States was not obliged to deliver. There was, it is true, an allegation that the Administrator was acting "illegally," and that the refusal to deliver was "unauthorized."  But these allegations were not based and did not purport to be based upon any lack of delegated power. [12]  Nor could they be, since

---

[11] Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. *North Carolina* v. *Temple,* 134 U. S. 22 (1890).

[12] This case must, therefore, be clearly distinguished from cases like *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165 (1893). In that case, it was held that the officer being sued lacked power to refuse delivery because, under the statutory scheme, his predecessor's determination that the plaintiff was entitled to delivery was binding.  A similar case would be presented here if the statute expressly provided that the Administrator's interpretations of contracts should be binding and irrevocable and if a later, or subordinate, official refused to follow a prior binding interpretation.  In such a case the issue would not be the correctness or incorrectness of the later decision under general law but simply the power of the official, under the statute, to make a decision at all.  Cf. *Ickes* v. *Fox,* 300 U. S. 82 (1937).

the Administrator was empowered by the sovereign to administer a general sales program encompassing the negotiation of contracts, the shipment of goods and the receipt of payment. A normal concomitant of such powers, as a matter of general agency law, is the power to refuse delivery when, in the agent's view, delivery is not called for under a contract and the power to sell goods which the agent believes are still his principal's to sell.

The respondent's contention, which the Court of Appeals sustained, was that there exists a third category of cases in which the action of a Government official may be restrained or directed. If, says the respondent, an officer of the Government wrongly takes or holds specific property to which the plaintiff has title, then his taking or holding is a tort, and "illegal" as a matter of general law, whether or not it be within his delegated powers. He may therefore be sued individually to prevent the "illegal" taking or to recover the property "illegally" held.

If this is an adequate theory on which to rest the conclusion that the relief asked is not relief against the sovereign, then the respondent's complaint made out a sufficient basis for jurisdiction. The complaint alleged that the respondent's contract with the United States was an immediate contract of sale under which title to the coal had passed. The coal was thus alleged to be the respondent's coal, not the United States' coal. Retention of it by the Administrator after demand was claimed to be a conversion; sale to a third party would aggravate the conversion. Since these actions were tortious they were "illegal" in the respondent's sense and hence were contended to be individual actions, not properly taken on behalf of the United States, which could be enjoined without making the United States a party.

We believe the theory to be erroneous. It confuses the doctrine of sovereign immunity with the requirement

that a plaintiff state a cause of action. It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened. He must, therefore, allege conduct which is "illegal" in the sense that the respondent suggests. If he does not, he has not stated a cause of action. This is true whether the conduct complained of is sovereign or individual. In a suit against an agency of the sovereign, as in any other suit, it is therefore necessary that the plaintiff claim an invasion of his recognized legal rights. If he does not do so, the suit must fail even if he alleges that the agent acted beyond statutory authority [13] or unconstitutionally.[14] But, in a suit against an agency of the sovereign, it is not sufficient that he make such a claim. Since the sovereign may not be sued, it must also appear that the action to be restrained or directed is not action of the sovereign. The mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title does not meet that requirement. True, it establishes a wrong to the plaintiff. But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers, the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented.

It is argued, however, that the commission of a tort cannot be authorized by the sovereign. Therefore, the argument goes, the allegation that a Government officer has acted or is threatening to act tortiously toward the plaintiff is sufficient to support the claim that he has acted beyond his delegated powers. It is on this contention that the respondent's position fundamentally rests, since it is admitted that, if the action to be prevented

---

[13] *Perkins* v. *Lukens Steel Co.,* 310 U. S. 113, 125 (1940).

[14] *Tennessee Power Co.* v. *T. V. A.,* 306 U. S. 118, 137–139 (1939); *Mine Safety Co.* v. *Forrestal,* 326 U. S. 371 (1945).

or compelled is authorized by the sovereign, the demand for it must fail as a demand against the sovereign. It has been said, in a very special sense, that, as a matter of agency law, a principal may never lawfully authorize the commission of a tort by his agent. But that statement, in its usual context, is only a way of saying that an agent's liability for torts committed by him cannot be avoided by pleading the direction or authorization of his principal.[15] The agent is himself liable whether or not he has been authorized or even directed to commit the tort. This, of course, does not mean that the principal is not liable-nor that the tortious action may not be regarded as the action of the principal. It does not mean, therefore, that the agent's action, because tortious, is, for that reason alone, *ultra vires* his authority. An argument to that effect was at one time advanced in connection with corporate agents, in an effort to avoid corporate liability for torts, but was decisively rejected.[16]

---

[15] Thus the Court said in *Hopkins* v. *Clemson College*, 221 U. S. 636, 643 (1911) ". . . neither a State nor an individual can confer upon an agent authority to commit a tort *so as to excuse the perpetrator*." (Emphasis added.) See also 1 Mechem, *Agency* (2d ed., 1914) 1077.

[16] See *Philadelphia, Wilmington & Baltimore R. Co.* v. *Quigley*, 21 How. 202, 209–210 (1859); 10 Fletcher, *Cyclopedia Corporations* (1931) § 4877. The contention of the respondent in the present case is remarkably similar to that made, as regards corporate agents, in *Chestnut Hill Turnpike Co.* v. *Rutter*, 4 Serg. & R. 6 (Pa. 1818). The argument is reported as follows, *id.* at p. 9:

"Now, a corporation never was and never can be authorised by law to commit a tort; they can invest no one with power for that purpose. If, therefore, an agent constituted for a legal purpose, inflict an injury, the corporation is no more answerable, than it would be for an act of that agent, done without any authority whatever derived from it, because being unauthorised to commit a wrong, it is out of the scope of its corporate powers."

The argument was rejected by the Court. See also *Thayer* v. *Boston*, 19 Pick. 511, 515 (Mass. 1837).

There is, therefore, nothing in the law of agency which lends support to the contention that an officer's tortious action is *ipso facto* beyond his delegated powers. Nor, we think, is there anything in the doctrine of sovereign immunity which requires us to adopt such a view as regards Government agencies. If, of course, it is assumed that the basis of the doctrine of sovereign immunity is the thesis that the king can do no wrong, then it may be also assumed that if the king's agent does wrong that action cannot be the action of the king. It is on some such argument that the position of the respondent rests. It is argued that an officer given the power to make decisions is only given the power to make correct decisions. If his decisions are not correct, then his action based on those decisions is beyond his authority and not the action of the sovereign. There is no warrant for such a contention in cases in which the decision made by the officer does not relate to the terms of his statutory authority. Certainly the jurisdiction of a court to decide a case does not disappear if its decision on the merits is wrong. And we have heretofore rejected the argument that official action is invalid if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so. *Adams* v. *Nagle,* 303 U. S. 532, 542 (1938). We therefore reject the contention here. We hold that if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded as the actions of a private principal under the normal rules of agency. A Government officer is not thereby necessarily immunized from liability, if his action is such that a liability would be imposed by the general law of torts. But the action itself cannot be enjoined or directed, since it is also the action of the sovereign.

*United States* v. *Lee,* 106 U. S. 196 (1882), is said to have established the rule for which the respondent contends. It did not. It represents, rather, a specific application of the constitutional exception to the doctrine of sovereign immunity. The suit there was against federal officers to recover land held by them, within the scope of their authority, as a United States military station and cemetery. The question at issue was the validity of a tax sale under which the United States, at least in the view of the officers, had obtained title to the property The plaintiff alleged that the sale was invalid and that title to the land was in him. The Court held that if he was right the defendants' possession of the land was illegal and a suit against them was not a suit against the sovereign. *Prima facie,* this holding would appear to support the contention of the plaintiff. Examination of the *Lee* case, however, indicates that the basis of the decision was the assumed lack of the defendants' constitutional authority to hold the land against the plaintiff. The Court said (106 U. S. at 219):

> "It is not pretended, as the case now stands, that the President had any lawful authority to [take the land], or that the legislative body could give him any such authority except upon payment of just compensation. The defence stands here solely upon the absolute immunity from judicial inquiry of every one who *asserts* authority from the executive branch of the government, however clear it may be made that the executive possessed no such power. Not only no such power is given, but it is absolutely prohibited, both to the executive and the legislative, to deprive any one of life, liberty, or property without due process of law, or to take private property without just compensation.

> "Shall it be said . . . that the courts cannot give a remedy when the citizen has been deprived of his property by force, his estate seized and converted to the use of the government without lawful authority, without process of law, and without compensation, because the President has ordered it and his officers are in possession?"

The Court thus assumed that if title had been in the plaintiff the taking of the property by the defendants would be a taking without just compensation and, therefore, an unconstitutional action.[17] On that assumption, and only on that assumption, the defendants' possession of the property was an unconstitutional use of their power and was, therefore, not validly authorized by the sovereign. For that reason, a suit for specific relief, to obtain the property, was not a suit against the sovereign and could be maintained against the defendants as individuals.

The *Lee* case, therefore, offers no support to the contention that a claim of title to property held by an officer of the sovereign is, of itself, sufficient to demonstrate that the officer holding the property is not validly empowered by the sovereign to do so. Only where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation does the *Lee* case require that conclusion.[18] The cases which followed *Lee's*

---

[17] The *Lee* case was decided in 1882. At that time there clearly was no remedy available by which he could have obtained compensation for the taking of his land. Whether compensation could be obtained today in such a case is, of course, not the issue here.

[18] For this reason the availability of a remedy in the Court of Claims may, in some cases, be relevant to the question of sovereign immunity. Where the action against which specific relief is sought is a taking or holding of the plaintiffs' property, the availability of a suit for compensation against the sovereign will defeat a contention that the action is unconstitutional as a violation of the Fifth Amendment. Compare *Hurley* v. *Kincaid*, 285 U. S. 95 (1932).

do not require a different result. There are a great number of such cases and, as this Court has itself remarked, it is not "an easy matter to reconcile all the decisions of the court in this class of cases." [19]   With only one possible exception, however, specific relief in connection with property held or injured by officers of the sovereign acting in the name of the sovereign has been granted only where there was a claim that the taking of the property or the injury to it was not the action of the sovereign because unconstitutional [20] or beyond the officer's statutory pow-

---

[19] *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446, 451 (1883). The ensuing years have not made the task less difficult. See *Brooks* v. *Dewar,* 313 U. S. 354, 359 (1941); *Land* v. *Dollar,* 330 U. S. 731, 738 (1947).

[20] Thus, in *Tindal* v. *Wesley,* 167 U. S. 204, 222 (1897), the Court stated that a suit to recover possession of property owned by the plaintiff and withheld by officers of a State was analogous to a suit to enjoin the officers from enforcing an unconstitutional statute. Any other view, the Court said, would lead to the result "that if a State, by its officers . . . should seize for public use the property of a citizen, without making or securing just compensation for him, and thus violate the constitutional provision declaring that no State shall deprive any person of property without due process of law . . . the citizen is remediless so long as the State, by its agents, chooses to hold his property . . . ."

And in *Scranton* v. *Wheeler,* 179 U. S. 141, 152–153 (1900), the Court said that the state court

"was under a duty to inquire whether the defendant had or could have any authority in law to do what he had done; and the suit was not to be deemed one against the United States because in the consideration of that question it would become necessary to ascertain whether the defendant could constitutionally acquire from the United States authority to obstruct the plaintiff's access . . . without making or securing compensation to him. . . .

"The vital question therefore is . . . whether the prohibition in the Constitution of the United States of the taking of private property for public use without just compensation has any application to the case . . . ."

ers.[21]   Certainly, the Court has repeatedly stated these to be the cases in which such relief could be granted.[22] A contrary doctrine was stated in *Goltra* v. *Weeks,* 271 U. S. 536 (1926).   In that case the United States had leased barges to the plaintiff under a contract which gave it a right to repossess under certain conditions.  Believing that those conditions existed, officers of the Government attempted to repossess the barges.   The Court held that a suit to enjoin them from doing so was not a suit against the United States.   The Court said that the taking of the barges was alleged to be a trespass and hence "illegal."  Therefore, the actions of the officers were personal actions, not the actions of the United States, and injunction against them would not be injunction against the United States.   271 U. S. at 544.   For this conclusion the Court relied entirely upon the opinion of Mr. Justice Hughes in *Philadelphia Co.* v. *Stimson,* 223 U. S. 605 (1912).   The reliance was misplaced, since the opinion in

---

[21] See, e. g., *Payne* v. *Central Pacific R. Co.,* 255 U. S. 228, 238 (1921), where the Court said that specific relief could be had because the Government officers had "departed from a plain official duty" "through a mistaken conception of their authority," and *Santa Fe Pac. R. Co.* v. *Fall,* 259 U. S. 197, 199 (1922), where the contention was "that the Secretary went beyond the powers conferred upon him by the statute."   The cases are myriad and it is unnecessary to review them here.

[22] *Poindexter* v. *Greenhow,* 114 U. S. 270, 288 (1884) ; *Philadelphia Co.* v. *Stimson, supra,* p. 7.   Although stated in reference to a suit for damages, the rule of the *Lee* line of cases was thus summed up by Mr. Chief Justice Hughes, in *Yearsley* v. *Ross Constr. Co.,* 309 U. S. 18, 21 (1940):

"Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, *the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred."* (Emphasis added.)

that case clearly and specifically rested on the claim that there was a lack of statutory power to act, not simply on a claim of tortious injury to the plaintiff.[23]

Opposed to the rationale of the *Goltra* opinion is the decision, by Mr. Justice Holmes, in *Goldberg* v. *Daniels,* 231 U. S. 218 (1913). There, as here, the question concerned the effect of a claimed sale of Government surplus property. The plaintiff submitted a sealed bid for a surplus war vessel, accompanied in that case by a certified check as payment in advance. When the bids were opened his was the highest. The Secretary of the Navy, however, determined not to accept the bid and refused to deliver the vessel. The plaintiff brought mandamus. He alleged that the sale was complete when the bids were opened and that the ownership of the vessel was therefore in him, and he asked that the Secretary be compelled to deliver it. The lower courts examined the details of the transaction and concluded that the sale was not complete until the Secretary announced his acceptance of the bid. On appeal here, it was expressly held that it was not necessary to decide whether the lower courts were correct. The suit must fail as one against the United States, the Court said, whether or not the sale was complete. In so holding the Court said, in effect, that the question of title was immaterial to the court's jurisdiction. Wrongful the Secretary's conduct might be, but a suit to relieve the wrong by obtaining the vessel would inter-

---

[23] The Court in the *Stimson* case said, 223 U. S. at p. 622:

"While the complainant's title lay at the foundation of the suit, and it would be necessary for the complainant to prove it, if denied, still if its title to the lands under water were established or admitted to be as alleged, the question would remain whether the defendant in imposing restrictions upon the use of the property was acting by virtue of authority validly conferred by a general act of Congress. This was the principal question which the complainant sought to have determined."

fere with the sovereign behind its back and hence must fail.[24]

Both cases are pressed upon us.   The petitioner argues, and correctly, that the *result* in the *Goldberg* case calls for a similar result in this case—a dismissal of the suit for want of jurisdiction.   The respondent argues, with equal correctness, that the *theory* of the *Goltra* opinion—that an allegation that the actions of Government officers are wrongful under general law is sufficient to show that they are "unauthorized"—calls for an affirmance of the decision below.   Since we must therefore resolve the conflict in doctrine [25] we adhere to the rule applied in the *Goldberg* case and to the principle which has been frequently repeated by this Court, both before and after the *Goltra* case: the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the

---

[24] The reasoning of the *Goltra* case is also contradicted by the conclusion reached by the Court in the converse case—where a suit is brought against the United States, in which it is claimed that the tortious actions of public officers, within the scope of their delegated powers, *are* the actions of the United States and give rise to a cause of action against it for breach of an implied contract.   *Portsmouth Co.* v. *United States,* 260 U. S. 327 (1922), demonstrates that such suits cannot be defeated by arguing that the officers' actions, because tortious, are outside of their authority and hence not actions of the United States.   Cf. *Hooe* v. *United States,* 218 U. S. 322 (1910) (specific limitation on the agent's authority).   See also *United States* v. *Causby,* 328 U. S. 256, 267 (1946)

[25] Whether the actual decision in the *Goltra* case, on the basis of the facts there presented, was correct or not is not relevant to the disposition of the present case, and we express no opinion on that question.   *Goltra,* unlike *Goldberg,* does not present a parallel to the facts in the case at bar.   The action complained of there was a seizure with a strong hand which was claimed to be unconstitutional, as an arbitrary taking of property without due process of law.   Indeed, the District Court took jurisdiction on the theory that the case before it, like the *Lee* case, was a case of unconstitutional action.   There is no such claim in the present case.

plaintiff's property) can be regarded as so "illegal" as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.[26]

---

[26] In addition to *Goltra* v. *Weeks, supra,* three other cases are argued to be inconsistent with this principle: *Sloan Shipyards* v. *U. S. Fleet Corp.,* 258 U. S. 549 (1922); *Land* v. *Dollar,* 330 U. S. 731 (1947); and *Ickes* v. *Fox,* 300 U. S. 82 (1937).

The *Sloan Shipyards* case is entirely inapposite. The suit there was against a corporate agency of the United States which had not acted in the name of the United States but in its own corporate name and right. The Court held only that the fact of agency did not immunize the agent from liability on its own contracts.

In *Land* v. *Dollar,* where the plaintiffs alleged that they were entitled to stock held by the Maritime Commission because the stock was received by the Commission only as a pledge, it was contended that any other kind of acquisition would constitute a violation of § 207 of the Merchant Marine Act, which allegedly gave the Commission authority to acquire stock only as collateral. The complaint therefore alleged that the members of the Commission "acted in excess of their authority as public officers." 330 U. S. at 738.

The ground for decision in *Ickes* v. *Fox* is not altogether clear. The argument was made in that case that the Secretary of the Interior had no statutory power to overrule a determination of the rights of the plaintiffs made by his predecessor in office. 300 U. S. at 86. The tortious injury to the plaintiffs was also argued, in reliance on *Goltra* v. *Weeks,* as a basis for avoiding the sovereign's immunity. The Court appears to have relied on both grounds without indicating which was controlling. It said: "The suits . . . are brought to enjoin the Secretary of the Interior from enforcing an order, the wrongful effect of which will be to deprive respondents of vested property rights not only acquired under Congressional acts, state laws and government contracts, *but settled and determined by his predecessors in office*" (emphasis added). *Id.* at 96–97. In support of the conclusion that the suit could be maintained, the Court relied first on *Noble* v. *Union Logging R. Co.,* 147 U. S. 165 (1893), a decision resting entirely on the officer's lack of statutory power to overrule the decision of his predecessor.

The application of this principle to the present case is clear. The very basis of the respondent's action is that the Administrator was an officer of the Government, validly appointed to administer its sales program and therefore authorized to enter, through his subordinates, into a binding contract concerning the sale of the Government's coal. There is no allegation of any statutory limitation on his powers as a sales agent. In the absence of such a limitation he, like any other sales agent, had the power and the duty to construe such contracts and to refuse delivery in cases in which he believed that the contract terms had not been complied with. His action in so doing in this case was, therefore, within his authority even if, for purposes of decision here, we assume that his construction was wrong and that title to the coal had, in fact, passed to the respondent under the contract. There is no claim that his action constituted an unconstitutional taking.[27] It was, therefore, inescapably the action of the United States and the effort to enjoin it must fail as an effort to enjoin the United States.

It is argued that the principle of sovereign immunity is an archaic hangover not consonant with modern morality and that it should therefore be limited wherever possible. There may be substance in such a viewpoint as applied to suits for damages. The Congress has increasingly permitted such suits to be maintained against

---

[27] There could not be since the respondent admittedly has a remedy, in a suit for breach of contract, in the Court of Claims. Such a suit, indeed, would be based on the theory that the action of the Administrator in refusing to deliver *was* the action of the United States and thus created a cause of action against it for breach of contract. Only if the Administrator's action was within his authority could such a suit be maintained. *Hooe* v. *United States*, 218 U. S. 322 (1910). It has never been suggested that a suit in the Court of Claims for breach of an express contract could be defeated because the action of the officer in breaching it constituted a tort and was therefore "unauthorized."

the sovereign and we should give hospitable scope to that trend.[28] But the reasoning is not applicable to suits for specific relief. For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government, as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, "The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief . . . ." [29]

There are limits, of course. Under our constitutional system, certain rights are protected against governmental action and, if such rights are infringed by the actions of officers of the Government, it is proper that the courts have the power to grant relief against those actions. But in the absence of a claim of constitutional limitation, the necessity of permitting the Government to carry out its functions unhampered by direct judicial intervention outweighs the possible disadvantage to the citizen in being relegated to the recovery of money damages after the event.

It is argued that a sales agency, such as the War Assets Administration, is not the type of agency which requires the protection from direct judicial interference which the doctrine of sovereign immunity confers. We do not doubt that there may be some activities of the Government which do not require such protection. There are others

---

[28] See *Brooks* v. *United States,* 337 U. S. 49 (1949).

[29] *Decatur* v. *Paulding,* 14 Pet. 497, 516 (1840).

in which the necessity of immunity is apparent. But it is not for this Court to examine the necessity in each case. That is a function of the Congress. The Congress has, in many cases, entrusted the business of the Government to agencies which may contract in their own names and which are subject to suit in their own names. In other cases it has permitted suits for damages, but, significantly, not for specific relief, in the Court of Claims. The differentiations as to remedy which the Congress has erected would be rendered nugatory if the basis on which they rest—the assumed immunity of the sovereign from suit in the absence of consent—were undermined by an unwarranted extension of the *Lee* doctrine.

The cause is reversed with directions that the complaint be dismissed.

*It is so ordered.*

MR. JUSTICE DOUGLAS.

I think that the principles announced by the Court are the ones which should govern the selling of government property. Less strict applications of those principles would cause intolerable interference with public administration. To make the right to sue the officer turn on whether by the law of sales title had passed to the buyer would clog this governmental function with intolerable burdens. So I have joined the Court's opinion.

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE JACKSON dissents.

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE BURTON concurs, dissenting.

Case-by-case adjudication gives to the judicial process the impact of actuality and thereby saves it from the hazards of generalizations insufficiently nourished by

experience. There is, however, an attendant weakness to a system that purports to pass merely on what are deemed to be the particular circumstances of a case. Consciously or unconsciously the pronouncements in an opinion too often exceed the justification of the circumstances on which they are based, or; contrariwise, judicial preoccupation with the claims of the immediate leads to a succession of *ad hoc* determinations making for eventual confusion and conflict. There comes a time when the general considerations underlying each specific situation must be exposed in order to bring the too unruly instances into more fruitful harmony. The case before us presents one of those problems for the rational solution of which it becomes necessary, as a matter of judicial self-respect, to take soundings in order to know where we are and whither we are going.

The case before us is this.

The Government had some surplus coal at an Army camp in Texas. On March 11, 1947, the War Assets Administration, through the Regional Office in Dallas, Texas, invited a bid from the plaintiff, respondent here, for purchase of the coal. The Dallas office expressed thus its approval of the bid submitted by the plaintiff: ". . . your terms of placing $17,500.00 with the First National Bank, Dallas, Texas, for payment upon presentation of our invoices to said bank are accepted." Thereupon the plaintiff arranged for resale of the coal and its shipment abroad. On April 1, 1947, the Dallas office wired the plaintiff that unless the sum of $17,500 was deposited in the First National Bank in Dallas by noon April 4, "the sale will be cancelled and other disposition made." Though claiming that this demand was in the teeth of the contract, the plaintiff arranged for an irrevocable letter of credit payable through the First National Bank of Dallas to the War Assets Administration. The Dallas office now insisted that unless cash was deposited.

"the sale of 10,000 tons of coal . . . will be cancelled ten days from this date." That office disregarded further endeavors by the plaintiff to adjust the matter, and on April 16 it informed the plaintiff that the contract was canceled. Having learned that the coal was to be sold to another concern, the plaintiff, asserting ownership in the coal and the threat of irreparable damage, brought this suit in the District Court of the United States for the District of Columbia to restrain the War Assets Administrator and those under his control from transferring the coal to any other person than the plaintiff.[1]

After issuing a temporary restraining order the District Court on May 6, 1947, dismissed the suit with this oral

---

[1] The prayer for relief in the complaint is as follows:

"(1) That this court issue its temporary restraining order against the defendant, his agents, assistants, deputies and employees and all persons acting or assuming to act under their direction, enjoining and restraining them from:

"(a) Carrying into effect the purported illegal and unauthorized concellation [sic] of the sale to the plaintiff of this coal.

"(b) Reselling or attempting to resell this coal to any other person whatsoever than the plaintiff, the legal owner thereof.

"(c) Delivering any or all of this coal to any other person.

"(2) That upon hearing of motion for a preliminary injunction that this Court continue the temporary restraining order as a preliminary injunction.

"(3) That upon final hearing this Court make permanent the preliminary injunction.

"(4) That upon hearing of this cause the Court decrees that:

"(a) The sale of this coal to the plaintiff by letter of War Assets Administration, dated March 19, 1947, is still valid and in effect.

"(b) That the purported sale to the Midland Coal Company is illegal, because title to this coal is in the plaintiff.

"(c) That, in view of the delay and disruption of arrangements caused by the purported cancellation, plaintiff shall have thirty days from the date of this Court's final order in which to give shipping instructions.

"(d) That the plaintiff may have such other further and different relief as may to the Court seem proper and just in the premises."

observation: "I am satisfied that this suit is in effect a suit for specific performance and the United States is a necessary party, and this Court is without jurisdiction." The Court of Appeals took a different view: "Appellant . . . did not seek the court's aid to interfere in the use of official discretion by the appellee. Such discretion was exercised at the time the contract with appellant was entered into. If that contract served to vest title immediately in appellant then it follows that the ruling in *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, . . . is controlling here. . . . Clearly, then, it was incumbent upon the lower court in determining its jurisdictional capacity to decide the ultimate question of whether or not a contract of sale had been consummated between appellant and appellee." 165 F. 2d 235.

The conflict between the District Court and the Court of Appeals on these facts reflects fairly enough the seeming disharmony of the numerous opinions in which this Court has dealt with the claim of immunity of government from unconsented suit. As to the States, legal irresponsibility was written into the Constitution by the Eleventh Amendment; as to the United States, it is derived by implication. *Monaco* v. *Mississippi,* 292 U. S. 313, 321; see Block, *Suits Against Government Officers and the Sovereign Immunity Doctrine,* 59 Harv. L. Rev., 1060, 1064–1065 (1946). The sources of the immunity are formally different but they present the same legal issues.

The subject is not free from casuistry. This is doubtless due to the fact that a steady change of opinion has gradually undermined unquestioned acceptance of the sovereign's freedom from ordinary legal responsibility. The vehement speed with which the Eleventh Amendment displaced the decision in *Chisholm* v. *Georgia,* 2 Dall. 419 (1793), proves how deeply rooted that doctrine was in the early days of the Republic. See *New*

*Hampshire* v. *Louisiana,* 108 U. S. 76, 86–88. In the course of a century or more a steadily expanding conception of public morality regarding "governmental responsibility" has led to a "generous policy of consent for suits against the government" to compensate for the negligence of its agents as well as to secure obedience to its contracts. *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381, 396; see also Borchard's bibliography in 20 A. B. A. J. 747, 748, and the materials in Judge Mack's opinion in *The Pesaro,* 277 F. 473, reversed, 271 U. S. 562.

The course of decisions concerning sovereign immunity is a good illustration of the conflicting considerations that often struggle for mastery in the judicial process, at least implicitly. In varying degrees, at different times, the momentum of the historic doctrine is arrested or deflected by an unexpressed feeling that governmental immunity runs counter to prevailing notions of reason and justice. Legal concepts are then found available to give effect to this feeling, and one of its results is the multitude of decisions in which this Court has refused to permit an agent of the government to claim that he is *pro tanto* the government and therefore sheltered by its immunity. Multitudinous as are these cases and the seeming inconsistencies among them, analysis reveals certain common considerations. The cases in which claim was made that a suit against one who holds public office is in fact a suit against the government fall into well-defined categories. (See the Appendix, *post,* pp. 729–732.) Though our opinions have not always been consciously directed toward this classification, it is supported not only by what was actually decided but also by much that is expressly said.

Our decisions fall under these heads:

(1) Cases in which the plaintiff seeks an interest in property which concededly, even under the allegation of

the complaint, belongs to the government, or calls for an assertion of what is unquestionably official authority.[2]

(2) Cases in which action to the legal detriment of a plaintiff is taken by an official justifying his action under an unconstitutional statute.[3]

(3) Cases in which a plaintiff suffers a legal detriment through action of an officer who has exceeded his statutory authority.[4]

(4) Cases in which an officer seeks shelter behind statutory authority or some other sovereign command for the commission of a common-law tort.[5]

---

[2] E. g., *Governor of Georgia* v. *Madrazo*, 1 Pet. 110 (1828); *Louisiana* v. *Jumel*, 107 U. S. 711; *Cunningham* v. *Macon & Brunswick R. Co.*, 109 U. S. 446; *Hagood* v. *Southern*, 117 U. S. 52; *Christian* v. *Atlantic & North Carolina R. Co.*, 133 U. S. 233; *North Carolina* v. *Temple*, 134 U. S. 22; *New York Guaranty & Indemnity Co.* v. *Steele*, 134 U. S. 230; *Belknap* v. *Schild*, 161 U. S. 10; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Murray* v. *Wilson Co.*, 213 U. S. 151; *Hopkins* v. *Clemson Agricultural College*, 221 U. S. 636; *Louisiana* v. *McAdoo*, 234 U. S. 627; *Lankford* v. *Platte Iron Works*, 235 U. S. 461; *Wells* v. *Roper*, 246 U. S. 335; *Morrison* v. *Work*, 266 U. S. 481; see *Land* v. *Dollar*, 330 U. S. 731, 737–738.

[3] E. g., *Osborn* v. *Bank of the United States*, 9 Wheat. 738 (1824); *Board of Liquidation* v. *McComb*, 92 U. S. 531; *Poindexter* v. *Greenhow*, 114 U. S. 270; *White* v. *Greenhow*, 114 U. S. 307; *Chaffin* v. *Taylor*, 114 U. S. 309; *Allen* v. *Baltimore & O. R. Co.*, 114 U. S. 311; *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Mississippi R. Comm'n* v. *Illinois C. R. Co.*, 203 U. S. 335; *Ex parte Young*, 209 U. S. 123; *Rickert Rice Mills* v. *Fontenot*, 297 U. S. 110.

[4] E. g., *Scully* v. *Bird*, 209 U. S. 481; *Atchison, T. & S. F. R. Co.* v. *O'Connor*, 223 U. S. 280; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605; *Waite* v. *Macy*, 246 U. S. 606; *Santa Fe Pac. R. Co.* v. *Fall*, 259 U. S. 197; *Work* v. *Louisiana*, 269 U. S. 250.

[5] E. g., *United States* v. *Lee*, 106 U. S. 196; *South Carolina* v. *Wesley*, 155 U. S. 542; *Tindal* v. *Wesley*, 167 U. S. 204; *Hopkins* v. *Clemson Agricultural College*, 221 U. S. 636; *Sloan Shipyards Corp.* v. *United States Fleet Corp.*, 258 U. S. 549; *Goltra* v. *Weeks*, 271 U. S. 536; *Ickes* v. *Fox*, 300 U. S. 82; *Land* v. *Dollar*, 330 U. S. 731. In

1. The series of cases which come within the first category began with *Governor of Georgia* v. *Madrazo,* 1 Pet. 110 (1828). There a claim was made upon the Governor of Georgia, as Governor, for moneys in the treasury of the State and slaves in its possession. The Court, in an opinion by Chief Justice Marshall, held that the State was actually though not formally the defendant in the suit. This was a departure by Marshall from what he had said a few years earlier in *Osborn* v. *Bank of the United States,* 9 Wheat. 738, to the effect that the Eleventh Amendment is "limited to those suits in which a State is a party on the record." *Id.* at p. 857. Such a formal test could not long survive experience, and it was explicitly laid to rest in *In re Ayers,* 123 U. S. 443, 487, *et seq.*

The crucial question in this class of cases is: when does a suit against one holding office inevitably involve the exercise of powers that are his as a functionary of government? Marshall's decision in the case of the Governor of Georgia disposed of this question with his sententious characterization of the nature of the claim against the Governor: "The demand made upon him, is not made personally, but officially." *Governor of Georgia* v. *Madrazo, supra,* 1 Pet. 110, 123. But the answer is not

four cases before the *Lee* case, suit was permitted against the governmental agent for trespass to property under the claim that it was owned by the government without any discussion that a question of sovereign immunity might be involved. *Meigs* v. *M'Clung's Lessee,* 9 Cranch 11 (1815); *Wilcox* v. *Jackson,* 13 Pet. 498 (1839); *Brown* v. *Huger,* 21 How. 305 (1858); *Grisar* v. *McDowell,* 6 Wall. 363 (1867). And where the sovereign immunity argument was raised, it was dismissed with "it certainly can never be alleged, that a mere suggestion of title in a state to property, in possession of an individual, must arrest the proceedings of the court, and prevent their looking into the suggestion, and examining the validity of the title." *United States* v. *Peters,* 5 Cranch 115, 139–40 (1809); see also *The Davis,* 10 Wall. 15 (1869).

always as manifest as it was in that case, for the Governor was asked to surrender moneys actually in the State's treasury and property in its possession. The fact that a defendant has no personal connection with conduct for which redress is sought is an indication that he is being sued because his position empowers him to carry out the desired relief. On the other hand, the mere fact that his official capacity is ascribed to the agent against whom relief is sought is not conclusive that he is being sued as for his sovereign. See e. g., *Perkins* v. *Elg*, 307 U. S. 325.

The pervasive manifestations of modern government beget situations in which it is not always obvious whether the demand made upon an individual is, in Marshall's phraseology, "not made personally, but officially." Such an ambiguity as to the meaning of particular circumstances is a commonplace task for the judicial process. The governing principle is clear enough. If a defendant is asked to transfer the possession or title of property which is the Government's, judged by the conventional tests of possession or ownership, or if he is asked to exercise authority with which the State has invested him and the desired action is in fact governmental action so far as an individual is ever *pro tanto* the impersonal government, such demands are effectively demands upon the sovereign, which require the sovereign's consent as a prerequisite to the grant of judicial remedies.

2. To the second category belong the cases where an official asserts the authority of a statute for his action but the injured plaintiff challenges the constitutionality of the statute. Threatened injury will then be enjoined if the plaintiff otherwise satisfies the requirements for equitable intervention. *Allen* v. *Baltimore & O. R. Co.*, 114 U. S. 311; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Ex parte Young*, 209 U. S. 123; *Rickert Rice Mills* v. *Fontenot*, 297 U. S. 110. So also recovery may be

had of property in an action against an official when the statute under which the seizure of the property was made is unconstitutional. *Poindexter* v. *Greenhow*, 114 U. S. 270. In these cases the suit against one holding office is deemed "a suit against him personally as a wrongdoer and not against the State." *Ex parte Young, supra,* 209 U. S. 123, 151.

These cases likewise apply a principle that is clear. There is an appearance of inconsistency in some of the cases only because opinions also are prey to the frailties of composition. Familiar phrases are not always used with critical precision or with due relevance to the circumstances of a particular case.

Specifically, there are instances where the unconstitutionality of a statute was conceded and yet the language of sovereign immunity was invoked to bar suit. See, e. g., *North Carolina* v. *Temple,* 134 U. S. 22; *Christian* v. *Atlantic & N. C. R. Co.,* 133 U. S. 233; *New York Guaranty & Indemnity Co.* v. *Steele,* 134 U. S. 230. These cases do not qualify the principle of the cases in category two. Regard for the facts of these cases brings them within the first category because the nature of the relief requested makes them either cases in which Government property would have to be transferred, or cases where the person sued could satisfy the court decree only by acting in an official capacity. The tortfeasor, that is, is not immunized because he happened to hold office, but because the tort cannot be redressed or, if threatened, averted, without bringing into operation governmental machinery.

Thus, even though a plaintiff's rights under a bond are unconstitutionally sought to be diminished, he cannot have his bond respected if to do so a court would have to order the levying and collecting of a tax. Only the State can exact taxes, and that sovereign function cannot be enforced without the State's consent by pretending

to sue a tax collector as an individual even though the individual sued had the duty, under the statute, to collect the tax. *North Carolina* v. *Temple,* 134 U. S. 22. Again, if title to property is in the Government, a suit to secure transfer of that property to the plaintiff will not lie against an official sued as an individual even though the State acquired title by way of an unconstitutional statute. *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446; *Christian* v. *Atlantic & N. C. R. Co.,* 133 U. S. 233; see *Land* v. *Dollar,* 330 U. S. 731, 737–738. So, also, if the relief sought by an injured plaintiff would involve, in part at least, destruction of the Government's interest in property, that part of relief cannot be granted even though a tort committed by a governmental agent gave rise to the injury. *Belknap* v. *Schild,* 161 U. S. 10; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636. To the extent that relief can be granted without affecting property rights of a State, not a consenting party to a controversy, an action is not barred. *Hopkins* v. *Clemson Agricultural College, supra,* 221 U. S. 636, 649; see *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601, 605–606.

Since the cases to which reference has just been made usually involve State debts and money in a State treasury, they have served to sponsor the proposition that a suit will not be permitted where the relief sought would "expend itself on the public treasury or domain, or interfere with the public administration." *Land* v. *Dollar,* 330 U. S. 731, 738. This is a way of saying that a court cannot entertain an action, when the sovereign has not consented to be sued, if the judgment sought from the court would require an official to do that which he could only do by virtue of the fact that he is an official, that *quoad hoc* he is the State. But the statement quoted does not mean that the mere fact that a State's revenue is adversely affected, is conclusive of a court's jurisdiction

to entertain suit against one who happens to hold a public office. For example, in *Board of Liquidation* v. *McComb,* 92 U. S. 531, a bondholder was permitted to enjoin an issue of bonds which would have reduced the value of his holdings because the issue was authorized by a statute which offended the impairment-of-obligation clause. And see *Allen* v. *Baltimore & O. R. Co.,* 114 U. S. 311; *Atchison, T. & S. F. R. Co.* v. *O'Connor,* 223 U. S. 280. And suits have lain to obtain public lands where the decree involved no discretion on the part of the individual whom the decree bound. *Santa Fe Pac. R. Co.* v. *Fall,* 259 U. S. 197; *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165; *Payne* v. *Central Pac. R. Co.,* 255 U. S. 228.

The matter boils down to this. The federal courts are not barred from adjudicating a claim against a governmental agent who invokes statutory authority for his action if the constitutional power to give him such a claim of immunity is itself challenged. Sovereign immunity may, however, become relevant because the relief prayed for also entails interference with governmental property or brings the operation of governmental machinery into play. The Government then becomes an indispensable party and without its consent cannot be implicated. See Mr. Justice Brandeis in *Morrison* v. *Work,* 266 U. S. 481, 486–487.

It should also be noted that a cause of action which would, for one reason or another, fail if brought against a private agent, is not saved because it is brought against one holding public office purporting to act under an unconstitutional statute. The action may fail because there is no "case" or "controversy," [6] or because the plaintiff

---

[6] See *Fitts* v. *McGhee,* 172 U. S. 516; see Block, *Suits against Government Officers and the Sovereign Immunity Doctrine,* 59 Harv. L. Rev. 1060, 1078, 1082 (1946).

has not suffered invasion of a legally protected interest,[7] or because the foundation for equitable relief is wanting,[8] or because the particular defendant has committed no wrong.[9] Such situations present no problem of sovereign immunity, but language pertaining to sovereign immunity sometimes creeps into opinions disposing of them.

3. Recovery has been sustained where, although the official acts under a valid statute, he actually exceeded the authority with which the statute had invested him. An action then lies against the agent because "he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he *asserts* authority as such officer. To make out his defence he must show that his authority was sufficient in law to protect him.". *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 14; *Scully* v. *Bird*, 209 U. S. 481; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605. Here also the traditional criteria for judicial action are prerequisite (see, e, g., *Louisiana* v. *McAdoo*, 234 U. S. 627); if they are not satisfied the question of sovereign immunity does not emerge. And if the relief necessarily implicates a resort to State funds the State becomes an indispensable party and without its consent the suit must fail. See *Louisiana* v. *McAdoo, supra; Lankford* v. *Platte Iron Works*, 235 U. S. 461.

4. The fourth category of cases brings us to the controversy immediately before the Court and demands detailed analysis. These are the cases, it will be recalled, in which an official seeks to screen himself behind the sovereign in a suit against him based on the commission

[7] *Louisiana* v. *McAdoo*, 234 U. S. 627; *In re Ayers*, 123 U. S. 443.

[8] *Hawks* v. *Hamill*, 288 U. S. 52; *Morrison* v. *Work*, 266 U. S. 481.

[9] *Fitts* v. *McGhee*, 172 U. S. 516; *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292.

of a common-law tort. See Appendix, Part II, C, *post,* p. 732. A plaintiff's right "under general law to recover possession of specific property wrongfully withheld" may be enforced against an official and he cannot plead the sovereign's immunity against the court's power to afford a remedy. *Land* v. *Dollar,* 330 U. S. 731, 736; *Belknap* v. *Schild,* 161 U. S. 10, 18–20; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636, 643.

The starting point of this line of cases is *United States* v. *Lee,* 106 U. S. 196. Familiar as that case is, its controlling facts bear rehearsal. The Arlington estate of General Robert E. Lee was seized for nonpayment of taxes. These taxes had in fact been tendered by a friend, but the official had interpreted his authority as permitting payment of the taxes only by the record owner. After seizure, the United States established a fort and cemetery on the land. The plaintiff, in whom title to the Arlington estate vested if its seizure could not be justified, brought an action of ejectment against the governmental custodians of the estate. After the overruling of a suggestion by the Attorney General of the United States that the Circuit Court was without jurisdiction because the property was in possession of the United States, the action was sustained against the defendants since they could not justify their possession by proof of a valid title in the Government. This Court affirmed, holding that the lower court was competent to decide the issues between the parties without the need of impleading the Government whose consent was withheld.

While there was some talk in the *Lee* opinion, as well as in some of the cases which followed that decision, about taking property without compensation, the basis of the action was that the defendants were ordinary tortfeasors, not immunized for their wrongful invasion of the plaintiff's property by the fact that they claimed to have

acted on behalf of the Government.[10]  This group of cases is quite different from those in which the plaintiff claimed that the defendant, purporting to act in an official capacity, exceeded the authority which a statute conferred upon him, or that the statute under which he justified his action exceeded the power of the legislature to confer such authority.  In this class of cases the governmental agent had valid statutory authority but he determined erroneously the condition which had to exist before he could exercise it.  The basis of action in this class of cases is the defendant's personal responsibility for the commission of a tort, which makes it irrelevant that by waiving the case against the governmental agent the plaintiff might choose to sue the Government as for a contract.  A detailed consideration of four recent cases should leave no doubt regarding the settled course of decision in conformity with this principle.

(a) In *Sloan Shipyards Corp.* v. *United States Fleet Corp.,* 258 U. S. 549, the controversy arose in connection with a contract between Sloan Shipyards and the Fleet Corporation, a Government corporation.  A proviso in the contract authorized the United States to take over the plant and complete the contract on Sloan Shipyards'

---

[10] The principle of the *Lee* case cannot be explained away by suggesting that at the time it was decided recovery could not be had against the United States in the Court of Claims for the misconduct of the governmental agent in seizing the Lee estate.  The short and conclusive answer is that recovery against the United States could not be had today unless a whole series of cases is to be overruled.  See, e. g., *Tempel* v. *United States,* 248 U. S. 121, 130, and the cases cited therein; *Russell* v. *United States,* 182 U. S. 516, 535; *Harley* v. *United States,* 198 U. S. 229, 235; *Hill* v. *United States,* 149 U. S. 593; *United States* v. *North American Trans. & Trading Co.,* 253 U. S. 330, 335; *Juragua Iron Co.* v. *United States,* 212 U. S. 297.  And there is nothing in the Federal Torts Claim Act which would indicate that under its provision suit could be brought.  28 U. S. C. § 2680 (a).

failure to perform. Under a statute the United States could also condemn the land and the business, if that were deemed necessary for the successful conduct of the war. That would bring into play a right to compensation enforceable in the Court of Claims. The Fleet Corporation seized the plant, but it was not made manifest that the seizure of the plant was an exercise of the Government's power of condemnation. Sloan Shipyards brought suit for the return of the property. The lower courts treated this as a suit for compensation, pursuable as such against the Government, in the Court of Claims. This Court, speaking through Mr. Justice Holmes, reversed, took the bill on its face as one based on the wrongful acts of the Fleet Corporation and as such entertainable regardless of the fact that the conduct of the Fleet Corporation might also give rise to a claim for compensation against the Government.[11]

This decision, which had thorough consideration here, would have to be overruled if the theory now proposed for this class of cases is to be accepted. The crux of the Court's opinion leaves no room for doubt:

> "The plaintiffs are not suing the United States but the Fleet Corporation, and if its act was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act. In general the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name. It is not impossible that the Fleet Corporation purported to act under the contract giving it the right to take

---

[11] This case is clearly apposite to the question whether in a suit against an agent the defense of sovereign immunity is applicable. To take away the immunity of a governmental corporation merely prevents the corporation from claiming that it is immunized from suit. But a suit will still not lie if a decree will affect the Government's, rather than the corporation's, property.

possession in certain events, but that the plaintiffs can show that the events had not occurred." 258 U. S. 549, 567–68.

(b) So, too, *Goltra* v. *Weeks*, 271 U. S. 536, would have to go by the board if the theory now proposed were accepted. The Government had leased its barges for operation by the plaintiff. Following a seizure of some of the barges and a threat to seize the rest for alleged failure to comply with the lease terms, the plaintiff brought a bill against the Secretary of War and the Chief of Engineers to enjoin the threatened seizure and to secure restoration of the barges already seized. This Court found that it was error for the Court of Appeals to hold that the United States was a necessary party and to have dismissed the bill for that reason. The governing principle was thus formulated by Mr. Chief Justice Taft:

"The bill was suitably framed to secure the relief from an alleged conspiracy of the defendants without lawful right to take away from the plaintiff the boats of which by lease or charter he alleged that he had acquired the lawful possession and enjoyment for a term of five years. He was seeking equitable aid to avoid a threatened trespass upon that property by persons who were government officers. If it was a trespass, then the officers of the Government should be restrained whether they professed to be acting for the Government or not. Neither they nor the Government which they represent could trespass upon the property of another, and it is well settled that they may be stayed in their unlawful proceeding by a court of competent jurisdiction, even though the United States for whom they may profess to act is not a party and can not be made one. By reason of their illegality, their acts or threatened acts are personal and derive no official justification from

their do ng them in asserted agency for the Government." 271 U. S. 536, 544.

(c) This line of cases, beginning with *United States* v. *Lee, supra,* 106 U. S. 196, was again followed in *Ickes* v. *Fox,* 300 U. S. 82. There a bill was sustained against the defendant, the Secretary of the Interior, based on the claim that compliance by the plaintiff with the terms of an agreement made with a predecessor Secretary of the Interior rendered the Secretary's action a trespass and as such enjoinable, though the action was justified as a governmental prerogative. In reaching this result, the Court specifically referred to the principles formulated in *Goltra* v. *Weeks,* above quoted.

(d) Only the other day this Court decided *Land* v. *Dollar,* 330 U. S. 731. There it was ruled that a claim by the plaintiff for the recovery of the possession of property physically controlled by members of the United States Maritime Commission but alleged to have been wrongfully withheld was not inherently a suit against the Government and gave jurisdiction to the court "to determine its jurisdiction by proceeding to a decision on the merits"—that is to determine whether the plaintiffs' claim that withholding of the pledged property was, under the circumstances, tortious and therefore subject to relief against the agents as individuals. 330 U. S. at 739. The Court once more applied the principle of *United States* v. *Lee, supra,* reinforced by reference to the cases that apply the *Lee* doctrine, including *Sloan Shipyards Corp.* v. *United States Fleet Corp., supra, Goltra* v. *Weeks, supra,* and *Ickes* v. *Fox, supra.* It also pointed out that the fact that there existed a remedy in the Court of Claims against the Government was irrelevant. 330 U. S. at 738.

In each of these cases this Court sanctioned a suit against an officer of the Government merely because the officer misconceived the facts, or misapplied the legal

principles, on which rested the plaintiff's right "under general law to recover possession of specific property wrongfully withheld." *Land* v. *Dollar, supra,* 330 U. S. at 736. Under such circumstances an officer acquires no immunity even though he committed a tort while attempting to discharge what would be his duty if he were correct on his assumption as to the ownership of the property or as to the right to its possession under the legal instruments governing the transaction. See Holmes, J., in *Miller* v. *Horton,* 152 Mass. 540, 26 N. E. 100; *Belknap* v. *Schild,* 161 U. S. 10, 18–19; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636, 643–5; *Sloan Shipyards Corp.* v. *United States Fleet Corp.,* 258 U. S. 549, 567. In this class of cases the officer can escape liability only if "special remedies have been provided by statute that displace those that otherwise would be at the plaintiff's command." *Sloan Shipyards Corp.* v. *United States Fleet Corp., supra* at 567. When there is such a special remedy the suit against the officer is barred, not because he enjoys the immunity of the sovereign but because the sovereign can constitutionally change the traditional rules of liability for the tort of the agent by providing a fair substitute. *Crozier* v. *Fried,* 224 U. S. 290; *Richmond Screw Anchor Co.* v. *United States,* 275 U. S. 331. But the general statute permitting suit in the Court of Claims in certain instances against the Government is not a statute that provides that remedies otherwise at the plaintiff's command are to be displaced.[12] A holding that the avail-

---

[12] When Congress has wished to displace the ordinary remedies against the agent, it has used explicit language to do so. See, *e. g.,* 56 Stat. 1013, 35 U. S. C. §§ 89–96; 36 Stat. 851, as amended, 40 Stat. 705, 35 U. S. C. § 68. It is of course not a denial of due process to make the remedy, even for unconstitutional action of the agents who do the Government's work, solely against the Government instead of the agent who committed the wrong. Cf. *Coffman* v. *Federal Laboratories, Inc.,* 171 F. 2d 94 (C. A. 3d Cir.); *Richmond Screw Anchor Co.* v. *United States,* 275 U. S. 331; *Crozier* v. *Fried,*

ability of an action for monetary damages in the Court
of Claims against the United States prevents a suit at
law, or, if the necessary requisites for equity jurisdic-
tion are present, in equity, against the governmental
agent, would be as novel as it is indefensible in the light
of the settled course of decisions.   Indeed, this argument
is not novel; it has been explicitly negatived in at least
two cases.   See *Sloan Shipyards Corp.* v. *United States
Fleet Corp.*, 258 U. S. 549, 567, 568; *Land* v. *Dollar*, 330
U. S. 731, 738.

"Sovereign immunity" carries an august sound.   But
very recently we recognized that the doctrine is in "dis-
favor."   *Federal Housing Administration* v. *Burr*, 309
U. S. 242, 245.[13]   It ought not to be extended by discredit-

224 U. S. 290.   It is upon such cases, interpreting specific provi-
sions, stating that relief should be only against the Government,
that the Court relied in *Yearsley* v. *Ross Construction Co.*, 309 U. S.
18.   That case is based on the *Richmond Screw Anchor Co.* case
and the *Crozier* case and is to be understood in the light of them.
In the *Yearsley* case suit was brought against a governmental agent
who had taken land under a statute which authorized the taking
of that particular land.   Impliedly the owner was to be compensated
for it in the Court of Claims.   The Court held that in an authorized
taking there is no liability on the part of the Government's repre-
sentatives who do the taking.   The fact that there was entire com-
pensation provided for emphasized the exclusive character of the
remedy against the Government.   In other words the Court was
dealing with a situation like the one involved in the *Richmond Screw
Anchor Co.* case.   Thus the *Yearsley* case does not touch the cases
decided, before and since that decision, on the basis of the *Lee* line
of cases.   Moreover, in this case petitioner alleges that there was
no authority on the part of the defendant to rescind the contract.
This Court has explicitly rejected the theory that the Government
could be sued for a tort in such circumstances.   *Tempel* v. *United
States*, 248 U. S. 121, 129, and cases cited; see also 28 U. S. C.
§ 2680 (a).

[13] "Whether this immunity is an absolute survival of the monarchial
privilege, or is a manifestation merely of power, or rests on abstract
logical grounds, see *Kawananakoa* v. *Polyblank*, 205 U. S. 349, it

ing a long line of decisions. No considerations of policy warrant the overruling of *United States* v. *Lee, supra,* and the cases which have applied it in giving a remedy for wrongdoing without harm to any public interest that deserves protection. To overrule the *Lee* case would at least have the merit of candor. To attempt to explain it on the ground that the Government itself was not suable for the wrongdoing at the time of the *Lee* decision is to invent a new theory to explain away a decision which has held its ground for nearly seventy years.

This liability for torts committed by defendants even though they conceive themselves to be acting as officials and for the public good, rests ultimately on the conviction that the policy behind the immunity of the sovereign from suit without its consent does not call for disregard of a citizen's right to pursue an agent of the government for a wrongful invasion of a recognized legal right unless the legislature deems it appropriate to displace the right of suing the individual defendant with the right to sue the Government. The fact that the governmental agent cannot claim the immunity of the sovereign of course does not spell liability, under all circumstances, for the discharge of what he conceived to be his duty. See, e. g., *Seavey* v. *Preble,* 64 Me. 120; *Fields* v. *Stokley,* 99 Pa. 306; the conflicting considerations are presented in *Miller* v. *Horton,* 152 Mass. 540, 26 N. E. 100. Similarly, equitable considerations bearing on the propriety of granting

---

undoubtedly runs counter to modern democratic notions of the moral responsibility of the State. Accordingly, courts reflect a strong legislative momentum in their tendency to extend the legal responsibility of Government and to confirm Maitland's belief, expressed nearly fifty years ago, that 'it is a wholesome sight to see "the Crown" sued and answering for its torts.' 3 Maitland, Collected Papers, 263." *Great Northern Life Ins. Co.* v. *Read,* 322 U. S. 47, 57, 59 (dissenting opinion). See also *Kennecott Copper Corp.* v. *State Tax Comm'n,* 327 U. S. 573, 580, 582 (dissenting opinion).

the extraordinary remedy of an injunction may here come into play, as is true whenever a private claim cuts across the public interest.[14]   But these are matters wholly beside the issue of sovereign immunity.

Of course where the United States is the owner in possession of property a court cannot interfere without the Government's consent.   But if it is to be denied that a court can decide the question, when properly presented, whether property held by an official belongs to the plaintiff, *Goltra* v. *Weeks, Sloan Shipyards Corp.* v. *United States Fleet Corp., Ickes* v. *Fox, Land* v. *Dollar,* and the other cases cited in Part II, C of the Appendix, *post,* p. 732, must be overruled.

Only the other day we said:

> "Where the right to possession or enjoyment of property under general law is in issue, and the defendants claim as officers or agents of the sovereign, the rule of *United States* v. *Lee, supra,* has been repeatedly approved . . . .   In *United States* v. *Lee, supra,* record title of the land was in the United States and its officers were in possession.   The force of the decree in that case was to grant possession to the private claimant.   Though the judgment was not *res judicata* against the United States, . . . it settled as between the parties the controversy over possession.

---

[14] Of course if control is sought over property which the Government seeks to retain, the considerations as to whether the equitable relief should be granted might be different.   Cf. *Louisiana* v. *Garfield,* 211 U. S. 70; *Goldberg* v. *Daniels,* 231 U. S. 218.   Here, however, that question is not involved, since the coal to which the plaintiff asserts title is, according to the complaint, to be sold to another dealer.   As between the two, the plaintiff, if it be a fact that he has fully complied with the contract, is entitled to the property.   The threatened transfer of property wrongfully withheld from the plaintiff may be enjoined if the conventional requirements of equitable relief are present.

Precisely the same will be true here, if we assume the allegations of the complaint are proved." *Land* v. *Dollar, supra,* p. 737.

When a pleading raises a substantial claim that the defendant is wrongfully withholding from the plaintiff property belonging to him, the defendant has not heretofore been permitted to shield himself behind the immunity of the sovereign. Only after the preliminary question of ownership is decided against the plaintiff does the claim of sovereign immunity come into play. Only then can it be said that the decree will affect property of the sovereign.

The Court tries to explain away *Land* v. *Dollar, supra,* by suggesting that it was a case where the officers acted in excess of their authority, although the opinion in that case makes clear that, even if the officers had authority, there still remained the issue whether the shares of stock were sold or pledged to the United States. If the latter, to hold after satisfaction of the pledge would be tortious, and the stock could be recovered in the suit against the defendants. The Court seeks to avoid the decision in *Ickes* v. *Fox, supra,* by saying that the ground of decision is not made clear. But not even these most dubious arguments can explain away *Goltra* v. *Weeks,* 271 U. S. 536. Accordingly, the Court impliedly overrules that decision. No reason of policy is vouchsafed for overruling a decision that carries the authority that the *Goltra* case does. It was based on a long series of prior cases, it was decided by a unanimous Court and delivered by a Chief Justice who brought to the Court from his Presidential experience a partiality toward freedom for executive action, as evinced by his opinion in the contemporaneous case of *Myers* v. *United States,* 272 U. S. 52. The *Goltra* case has since been frequently, and always approvingly, cited, most recently in *Land* v. *Dollar, supra,* as an application of the *Lee* doctrine. See also *Ickes* v.

*Fox,* 300 U. S. 82, 97. The *Goltra* case is now thrown into the discard because it did not cite *Goldberg* v. *Daniels,* 231 U. S. 218. That earlier case is deemed in conflict with the later *Goltra* decision and therefore the later case, so we are told, must yield to the earlier case. One would suppose that the failure of a full-dress opinion in a later case, which was thoroughly argued and not hastily decided, to cite an earlier opinion would not be attributed either to the Court's unawareness of the earlier opinion or its silent overruling of it. That the Court could not have been unaware of the decision in the *Goldberg* case is incontestably proved by the fact that it was referred to in the briefs in the *Goltra* case. That there was not obvious inconsistency between the two decisions is indicated by the fact that Mr. Justice Holmes, who wrote the *Goldberg* opinion, joined in the *Goltra* opinion. It is too much to assume that there was concerted silence about the *Goldberg* decision by the Court in *Goltra.*

A more obvious explanation lies on the surface. *Goldberg* was not cited in *Goltra* for the conclusive reason that *Goldberg* had nothing to do with *Goltra.* In the *Goldberg* case the Court, on the basis of the pleadings before it, was dealing with a suit where "the United States is the owner in possession of the vessel." 231 U. S. 218, 221–222. Accordingly, the suit was not for a tortious withholding of the plaintiff's property and the Government's immunity barred suit. In *Goltra,* on the contrary, the claim was for the delivery of property allegedly belonging to the plaintiff and tortiously in possession of the individual defendants, and the Court held that the plaintiff is entitled to establish such a claim as he can, "even though the United States for whom they [the defendants] may profess to act is not a party and can not be made one." 271 U. S. at 544. That is this case.

As is true of the present case, the right of control over property may depend on compliance with the terms of a

contract. The fact of compliance may rest, certainly in the first instance, in the judgment of a particular official. But that would not authorize him to rescind a valid contract if there had been full compliance. Of course, even that power may be conferred by agreement or by statute. But in the absence of such an agreement, or such a provision in a statute, a plaintiff may have redress against a defendant who has wrongfully rescinded a valid contract fully performed if a property right of the plaintiff is thereby tortiously affected.. He may also have his day in court if he denies the right of an official to determine definitively want of compliance, when the issue of compliance is decisive of the defendant's alleged wrongdoing. And these are precisely the issues tendered by this complaint. It is no answer at this stage of the case, to say that it was in fact within the agent's authority to do what he did. If a valid statute gives him power to withhold property which belongs to another, or if he has the power to revest title in the Government after a valid contract has vested it in another, then of course he is free from liability. But these are matters that go to the merits. The very purpose of this suit is to determine whether what the governmental agent did here was within his power. To decide whether the "authority is rightfully assumed is the exercise of jurisdiction, and must lead to the decision of the merits of the question." *United States* v. *Lee,* 106 U. S. 196, 219. The issues outlined above are issues which may be contested against a defendant, even though he hold office. *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165; *Payne* v. *Central Pacific R. Co.,* 255 U. S. 228; *Santa Fe Pacific R. Co.* v. *Fall,* 259 U. S. 197; *Land* v. *Dollar,* 330 U. S. 731.

The District Court therefore had jurisdiction over the controversy because only after a consideration of the

merits of the respondent's claim could it be determined whether the decree would affect Government property. Since that court has jurisdiction it can also determine whether a cause of action was stated and whether there are any considerations which would cause a court of equity not to grant the relief requested.

I would affirm the judgment of the Court of Appeals.

## APPENDIX.

*Cases since Osborn v. Bank of the United States, 9 Wheat. 738 (1824), concerning suits against governmental agents in which defense of sovereign immunity was raised.*

I. Cases in which jurisdiction was found wanting.

A. Plaintiff sought interest in property which concededly belonged to the Government, or demanded relief calling for an assertion of what was unquestionably official authority.

*Governor of Georgia* v. *Madrazo,* 1 Pet. 110 (1828); *Louisiana* v. *Jumel,* 107 U. S. 711; *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446; *Hagood* v. *Southern,* 117 U. S. 52; *Christian* v. *Atlantic & N. C. R. Co.,* 133 U. S. 233; *North Carolina* v. *Temple,* 134 U. S. 22; *New York Guaranty & Indemnity Co.* v. *Steele,* 134 U. S. 230; *Belknap* v. *Schild,* 161 U. S. 10; *Oregon* v. *Hitchcock,* 202 U. S. 60; *Louisiana* v. *Garfield,* 211 U. S. 70; *Murray* v. *Wilson Co.,* 213 U. S. 151; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636; *Goldberg* v. *Daniels,* 231 U. S. 218; *Louisiana* v. *McAdoo,* 234 U. S. 627; *Lankford* v. *Platte Iron Works,* 235 U. S. 461; *Wells* v. *Roper,* 246 U. S. 335; *Morrison* v. *Work,* 266 U. S. 481; *Minnesota* v. *United States,* 305 U. S. 382.

B. Decisions couched in terms of sovereign immunity or later so interpreted but which actually turned on other considerations.

1. No legally protected interest of the plaintiff was affected.

*Louisiana* v. *McAdoo*, 234 U. S. 627; *Tennessee Electric Power Co.* v. *Tennessee Valley Authority*, 306 U. S. 118.

2. The particular defendant was unrelated to the plaintiff's claim because he was not threatening plaintiff's interest.

*In re Ayers*, 123 U. S. 443; *Fitts* v. *McGhee*, 172 U. S. 516; *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292; *Mine Safety Appliances Co.* v. *Forrestal*, 326 U. S. 371 (alternative reason).

3. Nature of the adjudication required presence of the sovereign as a necessary party.

*Christian* v. *Atlantic & North Carolina R. Co.*, 133 U. S. 233; *Stanley* v. *Schwalby*, 162 U. S. 255; *New Mexico* v. *Lane*, 243 U. S. 52.

4. Case dismissed for want of ordinary requirements of equity jurisdiction.

*Hawks* v. *Hamill*, 288 U. S. 52; *Morrison* v. *Work*, 266 U. S. 481 (alternative ground).

C. Cases in which legislation specifically provided that only the sovereign itself could be sued for action authorized by statute.

*Crozier* v. *Fried, Krupp Aktiengesellschaft*, 224 U. S. 290; *Richmond Screw Anchor Co.* v. *United States*, 275 U. S. 331.

D. Cases in which the plaintiff pursued a statutory procedure indicating consent to suit against the sovereign and is therefore bound by its limitations.

*Smith* v. *Reeves,* 178 U. S. 436; *Great Northern Life Ins. Co.* v. *Read,* 322 U. S. 47; *Ford Motor Co.* v. *Department of Treasury of Indiana,* 323 U. S. 459; *Kennecott Copper Corp.* v. *State Tax Comm'n,* 327 U. S. 573.

II. Cases in which jurisdiction was entertained.

A. Cases in which an official justified his action under an unconstitutional statute.

*Osborn* v. *Bank of the United States,* 9 Wheat. 738 (1824); *Board of Liquidation* v. *McComb,* 92 U. S. 531; *Poindexter* v. *Greenhow,* 114 U. S. 270; *White* v. *Greenhow,* 114 U. S. 307; *Chaffin* v. *Taylor,* 114 U. S. 309; *Allen* v. *Baltimore & O. R. Co.,* 114 U. S. 311; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *In re Tyler,* 149 U. S. 164; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *Scott* v. *Donald,* 165 U. S. 58; *Scott* v. *Donald,* 165 U. S. 107; *Smyth* v. *Ames,* 169 U. S. 466; *Prout* v. *Starr,* 188 U. S. 537; *Mississippi R. Comm'n* v. *Illinois C. R. Co.,* 203 U. S. 335; *Ex parte Young,* 209 U. S. 123; *General Oil Co.* v. *Crain,* 209 U. S. 211; *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. 146; *Western Union Telegraph Co.* v. *Andrews,* 216 U. S. 165; *Herndon* v. *Chicago, R. I. & Pac. R. Co.,* 218 U. S. 135; *Truax* v. *Raich,* 239 U. S. 33; *Tanner* v. *Little,* 240 U. S. 369; *Greene* v. *Louisville & I. R. Co.,* 244 U. S. 499; *Public Service Co.* v. *Corboy,* 250 U. S. 153; *Sterling* v. *Constantin,* 287 U. S. 378; *Rickert Rice Mills* v. *Fontenot,* 297 U. S. 110.

B. Cases in which an officer exceeded his statutory authority.

*Rolston* v. *Missouri Fund Commissioners,* 120 U. S. 390; *Scully* v. *Bird,* 209 U. S. 481; *Atchison, T. & S. F. R. Co.* v. *O'Connor,* 223 U. S. 280; *Philadelphia Co.* v.

*Stimson,* 223 U. S. 605; *Waite* v. *Macy,* 246 U. S. 606; *Payne* v. *Central Pac. R. Co.,* 255 U. S. 228; *Santa Fe Pac. R. Co.* v. *Fall,* 259 U. S. 197; *Work* v. *Louisiana,* 269 U. S. 250.

C. Cases in which an officer sought shelter behind statutory authority or some other sovereign command for the commission of a common-law tort.

1. Cases in which an officer was not relieved of liability for tort merely because he was acting for the sovereign.

*Stanley* v. *Schwalby,* 147 U. S. 508; *Scranton* v. *Wheeler,* 179 U. S. 141; *Sloan Shipyards Corp.* v. *United States Fleet Corp.,* 258 U. S. 549; *Goltra* v. *Weeks,* 271 U. S. 536; *Ickes* v. *Fox,* 300 U. S. 82; *Land* v. *Dollar,* 330 U. S. 731.

2. Cases in which an officer was held liable for a common-law tort, but the opinion made reference to a situation involving an unconstitutional taking.

*United States* v. *Lee,* 106 U. S. 196; *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165; *South Carolina* v. *Wesley,* 155 U. S. 542; *Tindal* v. *Wesley,* 167 U. S. 204; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636.