**STATE OF LOUISIANA ex rel. William J. GUSTE, Jr., Attorney General, et al., Plaintiffs,**

**and**

**State of Alaska et al., Intervenor-Plaintiffs,**

**v.**

**Claude S. BRINEGAR, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 2145–73.**

United States District Court, District of Columbia, Civil Division.

Feb. 12, 1975.

Kendall L. Vick, Sp. Counsel, Civil Recovery Section, New Orleans, La., for State of Louisiana.

John H. Thompson, Chief Deputy Atty. Gen., Carson City, Nev., for State of Nevada.

Paul C. Duncan, Asst. Atty. Gen., Chief, Civ. Div., Oklahoma City, Okl., for State of Oklahoma.

James R. Adams, Deputy Atty. Gen., Commonwealth of Pa., Harrisburg, Pa., for Commonwealth of Pennsylvania.

William C. Bednar, Jr., Asst. Atty. Gen., Austin, Tex., for State of Texas.

James B. McCabe, Sp. Asst. Atty. Gen., Seattle, Wash., for State of Washington.

George D. Sheldon, Asst. Atty. Gen., Chief, Highways Section, Juneau, Alaska, for State of Alaska.

Faber F. Tway, Chief Legal Counsel, Highway Dept., Asst. Atty. Gen., Boise, Idaho, for State of Idaho.

Michael E. Perino, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for State of Wisconsin.

Stanley Z. Goodfarb, Asst. Chief Counsel, Highway Div., State of Ariz., Phoenix, Ariz., for State of Arizona.

Mark A. Madsen, Asst. Atty. Gen., Salt Lake City, Utah, for State of Utah.

Frank J. Kelley, Atty. Gen., State of Mich., Lansing, Mich., for State of Michigan.

Dennis G. Linder, Dept. of Justice, Washington, D. C., Gene Sullivan, Dept. of Justice, for Claude S. Brinegar, and others.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This action is before the Court on plaintiffs' Motion for Summary Judgment, and defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. The matter at issue has been tested recently before eight federal district courts and one circuit court of

appeals, and can be stated simply: Can the Government impose "contract controls" or its own schedule of obligation upon funds duly authorized under the Federal-Aid Highway Act of 1956 (Act)? Each of these courts has decided this question in the negative and enjoined the Government from withholding such funds.[1] This Court does likewise.

Originally, this case was begun as a class action by six States seeking declaratory and injunctive relief from the actions of the defendants in withholding Highway Trust Fund monies needed for highway construction purposes. The Court subsequently denied plaintiffs' motion for certification as a class action, but did not allow six additional States to intervene in the case.[2]

Plaintiffs alleged in their complaint that defendant had refused to distribute to them some $2.7 billion in highway funds authorized for fiscal years previous to and including 1974. As of November 30, 1974, by plaintiffs' calculations, the amount unreleased was $616 million, a figure which does not include approximately $1.5 billion in funds authorized for fiscal year 1976. Defendants admit that not all the 1975 funds have been made available for obligation (Provan Affidavit, Nov. 15, 1974), but they state that plaintiffs will eventually receive these and any other funds that are being withheld.[3]

The sums of money at issue are destined for the Federal-aid highway program, and specifically the Interstate Highway System. The appropriations process is somewhat complex and involves five separate stages: 1) authorization of funds by Congress, presently specified through 1979 (section 108(b) of the Act, codified at 23 U.S.C. § 101 nt. (1970)); 2) apportionment of authorized funds to the States by the Secretary of Transportation (Secretary) ac-

1. *See* State Highway Comm'n of Missouri v. Volpe, 479 F.2d 1099 (8th Cir. 1973), aff'g 347 F.Supp. 950 (W.D.Mo.1972) (hereinafter *Missouri* decision); State Highway Comm'n of Kansas v. Volpe, Civil No. T-5273 (D.Kan., decided Feb. 4, 1975); Alabama ex rel. Bakley v. Brinegar, Civil No. 74-297-N (M.D.Ala., decided Jan. 14, 1975); State of Nebraska Dep't of Roads v. Brinegar, Civil No. 74-L-19 (D.Neb., decided Dec. 20, 1974); California v. Brinegar, Civil No. S-74-72 (E.D.Cal., decided Sept. 4, 1974); Montana v. Brinegar, 380 F.Supp. 861 (D. Mont.1974); Iowa ex rel. State Highway Comm'n v. Brinegar, Civil No. 73-189-1 (S.D.Iowa, decided July 2, 1974); South Carolina State Highway Dep't v. Brinegar, Civil No. 72-940 (D.S.C., decided May 7, 1974; appeal pending, 4th Cir.).

Four additional cases involving identical issues are pending before district courts. See Arkansas ex rel. Tucker v. Brinegar, Civil No. LR-74-C-364 (E.D.Ark., filed Nov. 19, 1974); North Dakota ex rel. Olson v. Brinegar, Civil No. A1-74-29 (D.N.D., filed April 30, 1974); Ohio v. Brinegar, Civil No. 73-461 (S.D.Ohio, filed Nov. 9, 1973); Minnesota v. Brinegar, Civil No. 3-73-305 (D. Minn., filed Oct. 12, 1973).

Cases dealing with impoundment of funds under this and other Acts of Congress—now numbering over fifty, all but a few of which have prohibited any temporary or permanent impoundment of funds—have been collected in two current Congressional publications. *See* Court Challenges to Executive Branch Impoundments of Appropriated Funds (Comm. Print of the Joint Comm. on Congressional Operations, 93rd Cong., 2d Sess. (1974) ); Presidential Impoundment of Congressionally Appropriated Funds: An Analysis of Recent Federal Court Decisions (Comm. Print of House Comm. on Government Operations, by Congressional Research Service, Library of Congress, 93d Cong., 2d Sess. (1974) ).

(Since this decision was issued, plaintiff States Ohio and Minnesota in the cases *supra* have had motions for summary judgment granted in their favor by the district courts.)

2. Plaintiff States in this action are Louisiana, Nevada, Oklahoma, Pennsylvania, Texas, Washington, Alaska, Idaho, Wisconsin, Arizona, Utah, and Michigan. The defendants are the Secretary of Transportation, the Administrator of the Federal Highway Administration, and the Director of the Office of Management and Budget.

3. No consideration has been given by the Court to the *factual or legal statements* made by plaintiffs in their Jan. 24, 1975, and Jan. 27, 1975, Statements of Uncontested Material Facts, with one exception. That exception is a series of Federal Highway Administration tables included as exhibits to set forth the balance of funds unobligated to States as of Nov. 30, 1974, and to specify the sums authorized to States for fiscal year 1976. The tables that were presented are published by the Department of Transportation and are matters of public information.

cording to a statutory formula (23 U.S. C. § 104(a), (b)); 3) submission of programs by States to the Secretary for his approval (23 U.S.C. § 105); 4) submission of specific project plans by the States, the approval of which constitutes a federal contractual obligation (23 U. S.C. § 106); and 5) appropriations to reimburse States for construction costs on a project (23 U.S.C. § 121).

Defendants contend that after apportionment, the second step in the appropriations process, their responsibilities are discretionary, and that they are at liberty to delay the release of funds—in this case, as a means of curbing inflation.[4] They concede, though, that there is no intention of permanently inpounding funds, but only of attempting to control the rate of obligation of Federal-aid highway monies.

Plaintiffs assert that once apportionments are made to the States, there is narrowly limited discretion in the Secretary to review and approve projects. Statutory criteria are specified, and inflation control is not one of the factors that the Secretary is to take into account in releasing authorized funds. Further, plaintiffs rely upon a section of the Act which purports to prohibit any impoundment or withholding of funds from obligation. 23 U.S.C. § 101(c).

## I

As in most impoundment cases, defendants in this action have raised several threshold barriers to plaintiffs' bringing suit. They invoke doctrines of lack of subject matter jurisdiction, lack of case or controversy, non-reviewability of political questions, failure to state a claim, and sovereign immunity. Normally these are questions requiring careful analysis and determination by a court. Here, however, the identical is-

sues have been raised and resolved in numerous impoundment cases, and summary discussion is sufficient.

There is federal question jurisdiction in this action since the case arises under the Constitution and laws of the United States, and involves over $10,000 in controversy. 28 U.S.C. § 1331(a). *See* State Highway Comm'n of Missouri v. Volpe, *supra*, 479 F.2d at 1105; South Carolina State Highway Dep't v. Volpe, *supra* note 1, slip op. at 6.

The present case revolves around statutory construction and the interpretation of administrative discretion—certainly matters that are historically viewed as capable of resolution through the judicial process. Flast v. Cohen, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Stark v. Wickard, 321 U.S. 288, 309–310, 64 S.Ct. 559, 88 L.Ed. 733 (1944).

■ While the relationship between the legislative and executive branches of Government may well be affected by this action, the dispute can readily be settled by the exercise of judicial power, and therefore is not a non-justiciable political question. Powell v. McCormack, 395 U.S. 486, 518–19, 89 S.Ct. 1944, 23 L. Ed.2d 491 (1969); National Council of Community Mental Health Centers, Inc. v. Weinberger, 361 F.Supp. 897, 900 (D.D.C.1973).

■ Lastly, since the suit challenges actions of United States officials that allegedly are in excess of statutory authority or unconstitutional, it is within a recognized exception to the doctrine of sovereign immunity. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689–91, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); City of New York v. Ruckelshaus, 358 F.Supp. 669, 673 (D.D.C. 1973), aff'd, 494 F.2d 1033 (D.C.Cir.), aff'd, 420 U.S. 35, 95 S.Ct. 839, 43 L. Ed.2d 1 (1975).

4. *See generally* Hearings on Executive Impoundment of Appropriated Funds Before the Subcomm. on Separation of Powers of the Senate Comm. on the Judiciary, 92d Cong., 1st Sess. 59–84 (1971) (discussion of administrative machinery and legal authority for withholding appropriated or authorized funds by former Administrator of Federal Highway Administration).

## II

Defendants on the merits raise three justifications for their withholding of funds authorized to States for interstate highway construction: 1) the Act does not contain mandatory spending requirements; 2) the anti-impoundment provision in the Act is merely a precatory sense of the Congress resolution; and 3) the President has broad, inherent constitutional powers which enable him to control federal spending. The Court finds that none of these arguments justifies defendants' refusal to release funds in this case.

■ It may be true that the Secretary's approval of projects is required before States gain a "vested interest" in funds, and that there is no contractual obligation on the part of the United States before such approval. 23 U.S.C. 106(a). Still, as the court in the *Missouri* case noted, "[T]his [hardly] provides a basis for finding that the Secretary has lawful discretion to *withhold his approval* of projects for reasons not contemplated within the Act." 479 F.2d at 1109–10 (emphasis in original).

On the contrary, section 106(a) of the Act specifically refers to the criteria of section 109 as guides for the Secretary in granting or withholding project approval. These criteria require that a proposed highway facility "adequately meet the existing and probable future traffic needs and conditions in a manner conducive to safety, durability, and economy of maintenance." 23 U.S.C. § 109(a)(1). In addition, possible adverse economic, social, and environmental effects of proposed projects are to be considered. 23 U.S.C. § 109(h).

■ These statutory standards thus set the limits on the Secretary's discretion in regard to review of State projects. Nowhere in the Act or in its legislative history is there mention of weighing national problems of inflation before approving projects and allocating authorized sums to the States. Accordingly, the Secretary's discretion is restricted by the Act itself, and only the section 109 standards are appropriate reasons for withholding or delaying the obligation of funds.[5]

In finding that the Act does not allow the Secretary to withhold funds for reasons unrelated to the merits of a project itself, the Court has analyzed the Act's language in its entirety and found the Secretary's broad claim of discretion to be unsupported. Commonwealth of Pennsylvania v. Lynn, 501 F.2d 848, 854 (D.C.Cir.1974). This conclusion is confirmed by other sections in the Act which reiterate the mandatory duty imposed upon the Secretary,[6] as well as by those sections which evidence the Congressional intent of prompt construction of the Interstate Highway System.[7] Such an objective of early completion is at odds with a claim of discretion to

---

5. The only other section of the Act permitting the withholding of funds is section 209(g), and the justification necessary for such action is a determination by the Secretary of the Treasury that "the amounts which will be available in [the Highway Trust Fund] will be insufficient to defray the expenditures which will be required as a result of the apportionment to the States of the amounts authorized . . .." 23 U.S. C. § 120 nt. This section is plainly aimed at preventing the depletion of the Fund. Section 101(c) of the Act reiterates this purpose. *See* note 10 *infra.*

6. *See e. g.*, 23 U.S.C. § 118(a). "On and after the date that the Secretary has certified to each State highway department the sums apportioned . . . pursuant to an authorization under this title . . . such sums

shall be available for expenditure under the provisions of this title." *Id.* See also *id.* § 118(b).

7. *See, e. g., id.* § 101(b). This provision declares it to be in the national interest "to accelerate the construction" of the Interstate Highway System; states that the "prompt and early completion" of such System is "essential to the national interest and is one of the most important objectives of this Act"; and specifies Congress' intent that the System "be completed as nearly as practicable over the period of availability of the twenty-three years' appropriations" (i. e., through 1979). *See also id.* §§ 105(a), 106(a) (program and project actions by State highway departments and by Secretary to be carried out "as soon as practicable").

withhold funds for a period of months or even years.

■ Nor can defendants rely on the Anti-Deficiency Act for authority to delay the obligation of funds in this case. 31 U.S.C. § 665. The original Anti-Deficiency Act permitted the establishment of reserves only where an Act's objectives could be accomplished by the expenditure of an amount smaller than appropriated, but the Act was not a blank check to nullify Congressional intent or to reserve funds for non-program related reasons.[8] Moreover, in recent legislation the Anti-Deficiency Act has been clarified to explicitly reflect this original, limited purpose in allowing the establishment of reserves.[9]

Defendants also contend that section 101(c) of the Act is in the nature of a sense of the Congress resolution and that the provision's anti-impoundment language is not binding.[10] This contention is without merit since the Court has already determined that the Secretary lacks the discretionary power to delay or withhold funds for non-program related, anti-inflationary reasons. Further restrictions on impoundment are unnecessary in view of this holding.

■ However, section 101(c) does support the Court's construction of the Act. As noted in the *Missouri* case, the clear intent of Congress in enacting the measure was to emphasize that funds apportioned under the Act should not be impounded or withheld from obligation.[11] Even if the provision is precatory, it contains Congress' interpretation of "existing law," which is entitled to great weight in statutory construction. Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). And in the most recent Congressional consideration of the Federal-Aid Highway Act, the House-Senate Conference Committee, while rejecting a Senate measure strengthening section 101(c), stated, "The fact that this section of the Senate bill is not contained in the conference substitute shall not be construed to indicate anything other than complete agreement with the decision of the United States Court of Appeals for the Eighth Circuit" in the *Missouri* case.[12]

■ Defendants' final argument, that the President's express or implied constitutional powers justify holding back authorized funds, has been rejected by

8. *See* H.R.Rep. No.1797, 81st Cong. 2d Sess. 311 (1950) (amendment of Anti-Deficiency Act of 1906). *See generally* Abascal & Kramer, Presidential Impoundment Part I: Historical Genesis and Constitutional Framework, 62 Geo.L.J. 1549–1613 (1974) (history of the Anti-Deficiency Act's enactment and use).

9. *See* Congressional Budget and Impoundment Control Act of 1974, Pub.L.No. 93–344, § 1002, 88 Stat. 332.

10. 23 U.S.C. 101(c) states: "It is the sense of Congress that under existing law no part of any sums authorized to be appropriated for expenditure upon any Federal-Aid system which had been apportioned pursuant to the provisions of this title shall be impounded or withheld from obligation, for purposes and projects as provided in this title, by any officer or employee in the executive branch of the Federal Government, except such specific sums as may be determined by the Secretary of the Treasury, after consultation with the Secretary of Transportation, are

necessary to be withheld from obligation for specific periods of time to assure that sufficient amounts will be available in the Highway Trust Fund to defray the expenditures which will be required to be made from such fund."

11. 479 F.2d at 1115–16; *see also* H.R.Rep. 1554, 91st Cong., 2d Sess. 13 (1970).

12. S.Rep.No. 355, 93d Cong., 1st Sess. 89 (1973). It should be noted that future impoundment cases will reach the courts in a somewhat different posture from heretofore. The recently enacted 1974 Impoundment Control Act sets up statutory machinery for Executive rescission or deferral of budget authority, and also provides for certain legislative and legal actions by Congress in response to such Executive initiatives—including suits by the Comptroller General in U.S. District Court for the District of Columbia. See Congressional Budget and Impoundment Control Act of 1974, Pub.L.No. 93–344, tit. X, 88 Stat. 332.

numerous courts in impoundment cases.[13] The President's veto power under Article I, section 7 of the Constitution certainly could have been utilized to prohibit the authorization of expenditures for the Interstate Highway System if such expenditures were deemed excessive or inflationary. For whatever reason, that course was not taken here.

As for implied powers, the vesting of "[t]he executive Power" in the President[14] and the requirement to "take Care that the Laws be faithfully executed"[15] are hardly grants of legislative power. Upholding a construction of the Constitution which would authorize the President to refuse to fund or to delay indefinitely the funding of Congressionally approved programs "would be clothing the president with a power entirely to control the legislation of congress and paralyze the administration of justice. To contend that the obligation imposed on the president to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the constitution and entirely impermissible." Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 613, 9 L.Ed. 1181 (1838). Mr. Justice Black has expressed the same bedrock principles more recently in the *Steel Seizure Case*, the leading case on Executive-Congressional division of power: " . . . The Constitution [does] not subject [the] lawmaking power of Congress to presidential . . . supervision or control. . . . The Founders of this Nation entrusted the lawmaking power to the Congress alone in both good and bad times." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 587–89, 72 S.Ct. 863, 867, 96 L.Ed. 1153 (1952).

It may be, as defendants contend, that the Executive is uniquely suited to render timely, swift, and integrated fiscal and economic decisions—in contrast to the cumbersome committee, hearing, and floor debate process through which Congress works its will. However, "[N]owhere does our Constitution extol the virtue of efficiency and nowhere does it command that all our laws be fiscally wise." Guadamuz v. Ash, 368 F.Supp. 1233, 1243 (D.D.C.1973). Moreover, partly in response to this perceived problem of lack of coordination and consistency in Congressional appropriations, Congress recently passed an Act establishing a comprehensive Budget Committee and revamping the legislative budget process.[16] Even in this measure, though, it was emphasized that Congress, not the President, retains the constitutional role of guardian of the Treasury.[17]

### III

█ In view of the foregoing, the Court finds that the Federal-Aid Highway Act does not authorize discretionary action for non-program related reasons (e.g., fiscal policy) by the Secretary in withholding funds that have been apportioned to plaintiff States. The defendants' Motion to Dismiss or, in the alternative, for Summary Judgment is denied. Plaintiffs' Motion for Summary Judgment is granted.

Plaintiffs are entitled to a declaratory judgment that the imposition of contract controls by defendants upon funds authorized and apportioned for the Interstate Highway System is unlawful and invalid under the Federal-Aid Highway Act. Defendants are hereby enjoined to release such apportioned funds as are

---

13. *See, e. g.,* Guadamuz v. Ash, 368 F.Supp. 1233, 1243–44 (D.D.C.1973) ; Local 2677, Am. Fed'n of Gov't Employees v. Phillips, 358 F.Supp. 60, 77 (D.D.C.1973) ; South Carolina State Highway Dep't v. Volpe, *supra* note 1, slip op. at 12–14. The *Missouri* case did not consider the issue of the Executive's constitutional powers. 479 F.2d at 1106.

14. U.S.Const. art. II, § 1.

15. *Id.* § 3.

16. Congressional Budget and Impoundment Control Act of 1974, Pub.L.No.93–344, 88 Stat. 297.

17. See S.Rep.No. 579, 93d Cong., 1st Sess. 3–4 (1973) ; H.R.Rep.No.658, 93d Cong., 1st Sess. 19 (1973).

presently non-obligated, and not to withhold such funds in the future.

In view of the fluctuating amounts of money being released or withheld under the Act, and in view of the possible conflicts as to how much of the pre-fiscal year 1976 funds (i.e., those sums authorized and apportioned for fiscal years 1975 and for all previous years) have been withheld, the matter is referred to the Federal Highway Administrator for a determination of the amount owing to each plaintiff State and for the allotment to each plaintiff State of the monies that are due. The Administrator shall submit a report to the Court within sixty days relative to his determination of sums owed to each plaintiff State and his actions taken in implementation of this Order.