# Supreme Court of the Navajo Nation

---

**Marshall Plummer, et al.,**
**Petitioners,**
**v.**
**Honorable Judge Harry Brown, Kayenta District Court II,**
**Respondent.**
**Decided March 23, 1989**

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Albert Hale, Esq., Window Rock, Arizona, for the Petitioners Navajo Tribal Council Delegates; Britt E. Clapham, II, Esq., Assistant Attorney General, Stanley M. Pollack, Esq., Acting Assistant Attorney General, David P. Frank, Esq., and Violet A. P. Lui, Esq., Navajo Nation Department of Justice, Window Rock, Arizona, for the Petitioner Navajo Tribal Council; and Geoffrey Standing Bear, Esq., for Honorable Peter MacDonald Sr.

Opinion delivered by Austin, Associate Justice.

A petition for a writ of prohibition was filed in this Court seeking to prohibit the Honorable Judge Harry Brown, Judge of the Kayenta District Court, from exercising jurisdiction in the action titled *Peter MacDonald Sr., Chairman of the Navajo Tribal Council, Chief Executive Officer of the Navajo Nation and as an Individual v. Marshall Plummer, et al.,* No. KY-CV-019-89 (*MacDonald* suit). On March 2, 1989, we issued a permanent writ of prohibition.

## I

On February 21, 1989, Chairman Peter MacDonald Sr. filed the *MacDonald* suit against the Navajo Tribal Council and certain named delegates to the Navajo Tribal Council. The *MacDonald* suit sought declaratory and injunctive relief. The suit was filed in the Kayenta District Court, where the Honorable Judge Harry Brown is the presiding judge.

On the same date, February 21, 1989, Judge Brown issued a temporary restraining order enjoining the defendants from enforcing a Tribal Council resolution (CF-4-89) placing Chairman MacDonald on administrative leave with pay and removing all legislative and executive authority from the Chairman. In addition, Judge Brown issued an order setting a hearing on the temporary restraining order for February 24, 1989.

A petition for a writ of prohibition to stop Judge Brown from conducting the

hearing set for February 24, 1989, was filed on February 23, 1989. On February 24, 1989, we issued an alternative writ of prohibition directing Judge Brown not to proceed with the hearing. We also ordered Judge Brown to show cause on February 28, 1989, why the alternative writ should not be made permanent.

We heard arguments on February 28, 1989. On March 2, 1989, we ordered the following: (1) the writ of prohibition is made permanent; (2) the temporary restraining order is vacated; (3) the *MacDonald* suit is dismissed; (4) Judge Brown is permanently prohibited from presiding over any proceeding, whether for injunctive relief, declaratory relief or otherwise, involving any suit where Peter MacDonald Sr. has an interest; and (5) an opinion is to be filed explaining the Court's decision.

## II

The issues presented to this court are the following: (1) Whether the Kayenta District Court has jurisdiction to decide the *MacDonald* suit; (2) Whether the Honorable Judge Harry Brown has a duty to disqualify himself from the *MacDonald* suit because of his familial relationship to Chairman MacDonald; (3) Whether the Navajo Tribal Council has the authority to place Chairman MacDonald on administrative leave; (4) Whether the resolution placing Chairman MacDonald on administrative leave is in effect a bill of attainder; and (5) Whether Chairman MacDonald's civil rights were violated by the Navajo Tribal Council.

Prior to our decision on the merits we will quote a source from "Respondent's (Chairman MacDonald's) Supplemental Brief to Writ of Prohibition": "There are laws and procedures but these are only technical in nature. In order for the laws to work, we, the people must make it work." *Statement of Daniel Peaches*, March 1, 1989. This Court will decide the case based upon the law.

## III

### A

A proceeding for a writ of prohibition is used essentially to test the jurisdiction of a court. *Yellowhorse v. Window Rock Dist. Ct.*, 5 Nav. R. 85 (1986); *McCabe v. Walters*, 5 Nav. R. 43 (1985). A writ of prohibition will be issued as a matter of right if it is clear the district court is without jurisdiction and the petitioner has no other remedy available. *Yellowhorse*, 5 Nav. R. at 87. It is important to examine the history of the Navajo courts to find the source of Navajo court jurisdiction.

The courts of the Navajo Nation were created by the Navajo Tribal Council. *Johnson v. Navajo Nation*, 5 Nav. R. 192, 195 (1987). The whereas clauses in a 1958 resolution state the following:

1. The Navajo Tribal Council has heretofore attempted to provide for the appointment of a Chief Judge of the Tribal Courts, with responsibility for organizing the work of the Navajo Tribal Courts, and for the establishing of an appellate court of three judges to consist of the Area Director, the Area Counsel, and one of the Tribal attorneys (Resolutions Nos. CJ-4-53 and CJ-5-53, January 8, 1953); but these resolutions were disapproved by a former Commissioner of Indian Affairs, Dillon S. Myer, in a letter of March 3, 1953 (Law and Order 879-53, 880-53), holding that judges on the Navajo Reservation are not Tribal judges, but are judges of courts established by the Department of the Interior, and that their authority to act is derived from the regulations of the Department of the Interior, without objection, however, if the Tribal Council wished to undertake a complete revision of the law enforcement activity on the reservation by enacting ordinances *which would establish Tribal courts in lieu of the Courts of Tribal Offenses* theretofore established. (emphasis added).

. . . .

3. With the assumption of complete responsibility for enforcement of law and order on the Navajo Indian Reservation (Resolution No. CJ-45-58), it is appropriate at this time that the Council declare and seek the concurrence of the Commissioner of Indian Affairs that the courts of justice existing on the Navajo Indian Reservation *are courts of the Navajo Tribe* and not of the Department of the Interior, and that these courts be made effective and respected instruments of Justice.

*Navajo Tribal Council Resolution* CO-69-58 (October 16, 1958) (emphasis added). In this same resolution the Navajo Tribal Council gave the district courts original jurisdiction over certain actions, *Id.* at § 4, and gave the appellate court appellate jurisdiction, *Id.* at § 6.

History shows that the Navajo Tribal Council gave the Navajo courts their jurisdiction. Consequently, the Navajo courts can exercise only that jurisdiction granted by the Navajo Tribal Council. *Nez v. Barney*, 3 Nav. R. 126, 129 (1982). In recent amendments to the Navajo Sovereign Immunity Act, 1 N.T.C. §§ 351 - 355 (Act), the Navajo Tribal Council made it clear that,

> The Courts of the Navajo Nation are created by the Navajo Tribal Council within the government of the Navajo Nation and the jurisdiction and powers of the Courts of the Navajo Nation, particularly with regard to suits against the Navajo Nation, are derived from and limited by the Navajo Tribal Council as the governing body of the Navajo Nation.

1 N.T.C. § 353(c) (1988); *Navajo Tribal Council Resolution* CMY-28-88 (May 6, 1988).

### B

The Act controls suits against the Navajo Nation. The Act provides that "Navajo Nation means: (1) The Navajo Tribal Council; ... [and] (4) The

Delegates to the Navajo Tribal Council." 1 N.T.C. § 352(1) and (4). The *MacDonald* suit alleges a cause of action predicated upon actions taken by the Navajo Tribal Council and the council delegates while performing legislative functions. The suit challenges certain resolutions passed by the Navajo Tribal Council. When the Navajo Tribal Council and the delegates to that body are performing legislative functions they fall within the definition of Navajo Nation and the Act applies.

Identifying the true defendant does not depend upon how Chairman MacDonald names the defendants in the heading of his complaint. The general rule, which we adopt today, is that if the ultimate relief sought is relief against the sovereign, then the suit cannot proceed without the consent of the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Chairman MacDonald seeks to restrain the Navajo Tribal Council and its members from taking legislative action and from carrying out such action. The effect is to prevent the Navajo Tribal Council from carrying out essential governmental functions. The relief sought is ultimately against the Navajo Nation; therefore, the Act applies.

## C

A review of the Act's history shows that it was first passed by the Navajo Tribal Council by a vote of 50 in favor and 12 opposed. Chairman MacDonald signed the original Act. *Navajo Tribal Council Resolution* CMY-42-80 (May 6, 1980). The first amendments to the Act were passed by the Navajo Tribal Council by a vote of 67 in favor, 3 opposed and 2 abstaining; the resolution was signed by Vice Chairman Edward T. Begay. *Navajo Tribal Council Resolution* CJY-55-85 (July 25, 1985). The next amendments were passed by a vote of 54 in favor, 5 opposed and 2 abstaining. Chairman Peterson Zah signed that resolution. *Navajo Tribal Council Resolution* CD-60-86 (December 11, 1986). The latest major amendments to the Act took place in 1988. The "Resolved" portion of that resolution specifically states that:

> 2. The Navajo Tribal Council as the  governing body of the Navajo Nation further affirms that the jurisdiction and powers of the Courts of the Navajo Nation derive from the Navajo Tribal Council as the governing body of the Navajo Nation and that the courts are without jurisdiction or power to waive the sovereign immunity of the Navajo Nation or that of its authorized officials, representatives, or employees acting within the scope of their official duties and authority.

That resolution was passed by the Navajo Tribal Council by a vote of 67 in favor and 0 opposed. The resolution was signed by Chairman MacDonaid. *Navajo Tribal Council Resolution* CMY-28-88 (May 6, 1988). The resolutions show that the Navajo courts did not enact the Navajo Sovereign Immunity Act, but the courts are required to apply it, and that the resolutions were passed with almost

no opposition from either the current majority or minority factions of the Navajo Tribal Council or the presiding chairman.

Several laws in the Act control our decision in this case. They are the following. The Navajo district courts have no jurisdiction in suits against the Navajo Nation without its express consent. 7 N.T.C. § 257. The Navajo Nation is a sovereign nation which is immune from suit. 1 N.T.C. § 353(a). Public officials or agents of the Navajo Nation may not be sued for injury or damage alleged to have been sustained by "[l]egislative or judicial action or inaction or administrative action or inaction of a legislative or judicial nature, such as adopting or failure to adopt a law or by failing to enforce a law." 1 N.T.C. § 354(f)(4)(C). As a jurisdictional condition precedent to suit against the Navajo Nation, the plaintiff must comply with the conditions set forth at 1 N.T.C. § 355. Any officer, employee or agent of the Navajo Nation may be sued in Navajo court to compel compliance with the law by use of declaratory or prospective mandamus or injunctive relief, but "[t]his subsection [g] shall not apply to the Chairman of the Navajo Tribal Council, the Vice Chairman of the Navajo Tribal Council, or the delegates to the Navajo Tribal Council." 1 N.T.C. § 354 (g)(1) and (3).

Petitioners argue that the Kayenta District Court has no jurisdiction because Chairman MacDonald has not complied with the requirements for suing the Navajo Nation under the Act and that the Act prohibits any plaintiff from making the Navajo Tribal Council and the delegates to the Navajo Tribal Council defendants in any suit. On the other hand, Chairman MacDonald argues that the Act does not apply because this is an action between the Chairman of the Navajo Tribal Council and the Navajo Tribal Council and named delegates to the Navajo Tribal Council. Chairman MacDonald argues that this is a unique case that falls outside the Act because the Navajo Nation is suing itself. Chairman MacDonald further argues that he, in an individual capacity, is suing the Navajo Tribal Council and named delegates to the Navajo Tribal Council.

We agree with petitioners that the Kayenta District Court has no jurisdiction over the *MacDonald* suit. We will not adopt Chairman MacDonald's argument that, because this is a unique case where the Navajo Nation has sued itself, we must ignore express tribal code law on suits against the Navajo Nation. If we ignore the provisions in the Act, in effect the Navajo courts would be creating their own jurisdiction — a power Navajo courts do not have. Navajo code law expressly provides that the Navajo courts can exercise jurisdiction over suits against the Navajo Nation only when authorized by the Navajo Tribal Council. 1 N.T.C. § 353(c); 1 N.T.C. § 354(c).

Furthermore, we cannot in good conscience allow Chairman MacDonald to sue the Navajo Nation without complying with the Act, while simultaneously requiring other private plaintiffs to comply with the Act. That would indeed be a gross violation of equal protection under the law. A Navajo tribal official, simply because he or she is an official, enjoys no greater rights under our law than ordinary Navajo Nation citizens.

The law is clear that neither Chairman MacDonald, nor any plaintiff can make the Navajo Tribal Council a defendant in a suit of this type. 1 N.T.C. § 354 (g)(3). Neither can the Navajo Tribal Council nor its delegates be sued based upon their actions in performing legislative functions. 1 N.T.C. § 354 (f)(4)(C). The reason is that the Navajo Government must "function without undue interference in furtherance of the general welfare and the greatest good of all the people." 1 N.T.C. § 354(a). Chairman MacDonald has failed to satisfy the jurisdictional conditions precedent to suing the Navajo Nation. 1 N.T.C. § 355. Every person suing the Navajo Nation must satisfy the conditions to obtain court jurisdiction.

The Kayenta District Court has no jurisdiction over the *MacDonald* suit; therefore, we are precluded from addressing issues number 3, 4 and 5. A court that decides an issue over which it has no subject matter jurisdiction enters an invalid decision.

By this decision, the Court does not hold that Chairman MacDonald has no recourse through the courts. Chairman MacDonald has ample opportunity to sue the proper officials and obtain a ruling on the validity of any Navajo Tribal Council resolution that he alleges to be invalid. The Court simply holds that this particular suit is not properly brought.

## IV

As the above effectively disposes of the petition for a writ of prohibition, the only other issue we will address concerns the Honorable Judge Harry Brown's failure to disqualify himself from presiding over the *MacDonald* suit.

Canon 3C of the American Bar Association Code of Judicial Conduct, as adopted by the judiciary of the Navajo Nation, provides that:

> c.  Disqualification.
>
> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> . . . .
>
> (d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> (1) is a party to the proceeding, or an officer, director, or trustee of a party....

Judge Brown clearly had a duty to disqualify himself from the *MacDonald* suit at the outset due to his familial relationship to a party in the suit. We hold that a writ of prohibition can be issued to stop a district judge from presiding over a case if the situation from the outset clearly denies the defendant an unbiased and impartial tribunal. There is clear bias here, where Judge Brown is Chairman MacDonald's brother-in-law. Petitioners need not exhaust remedies in the district court to obtain relief in this Court.

## V

For the reasons given, the alternative writ of prohibition is made permanent; the temporary restraining order issued by the Kayenta District Court is vacated; the suit entitled *MacDonald v. Plummer, et al.*, No. KY-CV-019-89, filed in the Kayenta District Court, is dismissed; and the Honorable Judge Harry Brown is permanently prohibited from presiding over any proceeding, whether for injunctive relief, declaratory relief, or otherwise, involving any suit where Chairman Peter MacDonald Sr. has an interest. SO ORDERED.

Chief Justice Tso and Associate Justice Bluehouse concur.