Cruz **MARTINEZ–RIVERA,**
et al., Plaintiffs

v.

Roberto **SANCHEZ–RAMOS,**
et al., Defendants.

Civil No. 05–2146 (JAG).

United States District Court,
D. Puerto Rico.

June 20, 2008.

Edwin Prado–Galarza, Prado, Nunez & Associates, PSC, Francisco Ramos–Martinez, San Juan, PR, for Plaintiff.

Maria Judith Surillo, Department of Justice, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Agustin Cartagena ("Cartagena") and Antonio Martinez's ("Martinez")(collectively "Defendants") Motion to Dismiss. (Docket No. 80). For the reasons set forth below, the Court **DENIES** Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2008, Plaintiffs filed a Third Amended Complaint in the case at bar. Plaintiffs request money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendment of the Constitution of the United States, and the Constitution and laws of the Commonwealth of Puerto Rico. Specifically, Plaintiffs allege that on October 24, 2008, the Puerto Rico Police Department ("PRPD") conducted a raid in the Torre Sabana Housing Project during which Luis Cepeda Martinez ("Cepeda") was shot and killed by PRPD police officers (hereinafter "Torre Sabana raid"). According to Plaintiffs, Cepeda was unarmed and posed no threat to the PRPD officers when he was shot. Plaintiffs are all members of Cepeda's family.

Plaintiffs' complaint proffers claims against several PRPD police officers. At the time of the Torre Sabana raid, Cartagena was the Superintendent of the PRPD. Plaintiffs contend that Cartagena was responsible for the instructions given to the police officers that shot Cepeda. According to Plaintiffs, Cartagena also failed to adequately train, discipline, and monitor the police officers involved in the raid as well as failed to identify the dangerous tendencies of those police officers.

Regarding Martinez, Plaintiffs aver that as the supervisor of the PRPD Carolina Drug Unit, he was present and directly participated in the Torre Sabana raid. Furthermore, Plaintiffs allege that Martinez's negligent acts and omissions as a supervisor of the Torre Sabana raid led to the death of Cepeda. Moreover, Plaintiffs claim that Martinez failed to adequately train, discipline, and monitor the police officers involved in the raid as well to identify the dangerous tendencies of said police officers. (Docket No. 76).

On April 18, 2008, Defendants moved to dismiss, Plaintiffs' claims against them. Defendants argue that Plaintiffs have failed to proffer an adequate supervisor liability claim under section 1983. Alternatively, Cartagena argues that Plaintiffs' claims against him should be dismissed pursuant to the Eleventh Amendment. Cartagena stresses that Plaintiffs have not clarified whether the claims against him are in his individual or official capacity. Nevertheless, Cartagena avers that the Eleventh Amendment bars an official capacity suit against him under section 1983. Finally, Cartagena argues that he has not been properly served and, therefore, all claims against him should be dismissed. (Docket No. 80).

On May 19, 2008, Plaintiffs opposed Defendants' Motion to Dismiss. Plaintiffs clarified that the claims brought forth against Defendants are in their personal and not their official capacity and, as such, the Eleventh Amendment is inapplicable.[1] Moreover, Plaintiffs claim that they have proffered an adequate supervisor liability claims under section 1983. Regarding the service of process on Defendants, Plaintiffs inform the Court that summons have been issued and that they are in the process of serving Defendants. In addition, Plaintiffs claim that the time period to serve Defen-

---

1. We interestingly note that Plaintiffs' Third Amended Complaint states that Cartagena is being sued in his personal and official capacity. (Docket No. 76, ¶ 3). However, Plaintiffs clarified in their response to Defendants' Motion to Dismiss that Cartagena was being sued only in his personal capacity. (Docket No. 90). Nonetheless, it is important to stress that the Eleventh Amendment bars any action in a federal court for damages against a state office-holder in his official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

dants has not yet expired. (Docket No. 90).

## STANDARD OF REVIEW

### A. *Motion to Dismiss Standard.*

In *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007)(quoting *Twombly,* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*quoting Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain re-

covery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

Defendants contend that Plaintiffs have failed to proffer an adequate supervisor liability claim. In addition, Cartagena argues that Plaintiffs' claims against him should be dismissed pursuant to the Eleventh Amendment. Finally, Cartagena argues that he has not been properly served and, therefore, all claims against him should be dismissed. We begin by discussing whether Plaintiffs have proffered an adequate supervisor liability claim in this section 1983 suit.

### 1. *Supervisor Liability*

■■■■ Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *Whitfield v. Melendez–Rivera,* 431 F.3d 1, 14 (1st Cir.2005)(internal citation omitted). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence ... amounting to deliberate indifference." *Id.* (internal citations and quotations omitted). A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance,* 868 F.2d 9, 18 (1st Cir.1989). "The 'affirmative link' requirement con-

templates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir.1995)(internal citations and quotations omitted).

 Claims of inadequate training require proof that the failure to train was a policy or deliberate choice made by the Defendants and that there is a direct link between the Defendants' inaction and the constitutional violation. *See Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir. 1992). Evidence of an isolated negligent act is not sufficient to satisfy this heavy burden. *See id.* Furthermore, with regards to Defendants' lack of practices and procedures, Plaintiff must show that the supervisors' policies or customs caused the alleged constitutional deprivations. In addition, Plaintiff must show that the asserted policy was well-settled and widespread and Defendants did nothing to end the practice. *See Elliott v. Cheshire County*, 940 F.2d 7, 12 (1st Cir.1991).

 In determining whether Plaintiffs' claims against Defendants should be dismissed, we must bear in mind that "[i]n a civil rights case, there is no heightened pleading standard." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 5 (1st Cir.2005)(citing *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66–67 (1st Cir.2004)). Plaintiffs contend that there was a shooting of an unarmed and harmless civilian by police officers without provocation or reason. Said allegation taken as true certainly constitutes a constitutional violation.[2] *Martinez–Rivera v. Ramos*, 498 F.3d 3, 7 (1st Cir.2007).[3]

Regarding Martinez, Plaintiffs aver that he was present and directly participated in the Torre Sabana raid where an unarmed Cepeda was killed. Furthermore, Plaintiffs allege that Martinez's negligent acts and omissions as a supervisor of the Torre Sabana raid led to the death of Cepeda. Moreover, Plaintiffs claim that Martinez failed to adequately train, discipline, and monitor the police officers involved in the raid as well to identify the dangerous tendencies of those police officers. Plaintiffs further claim that Cartagena as Superintendent of the PRPD was responsible for the instructions given to the police officers that shot Cepeda. According to Plaintiffs, Cartagena also failed to adequately train, discipline, and monitor the police officers involved in the raid as well as failed to identify the dangerous tendencies of said police officers.

 Taking as true all of the aforementioned factual allegations and drawing all reasonable inferences in Plaintiffs' favor leads us to the conclusion that Plaintiffs have effectively alleged that Defendants directly participated in the Torre Sabana raid, and/or exhibited conduct that

**2.** Plaintiffs bring the present suit under Section 1983. It is well settled law that Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(internal citations and quotations omitted). Under section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission*, 318 F.3d 32, 39 (1st Cir.2003); *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001). Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution of the United States. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989).

**3.** "There is no question that the shooting of an 'unarmed and harmless' civilian by police officers 'without provocation or reason,' if proved, constitutes a constitutional violation." *Id.*

amounts to condonation or tacit authorization of the alleged unconstitutional acts committed by the police officers on that date. Namely, the shooting of an unarmed and defenseless Cepeda. Thus, this Court finds Plaintiffs have proffered an adequate supervisor liability claim under Section 1983 against Defendants.[4] Now, we will address Cartagena's alternative argument under the Eleventh Amendment.

## 2. *Eleventh Amendment*

Cartagena stresses that he is an official of the Commonwealth of Puerto Rico and that the Eleventh Amendment bars official capacity suits against agents of the Commonwealth of Puerto Rico. However, Plaintiffs have clarified that the suit brought against Cartagena is in his personal and not in his official capacity. Bearing this in mind, we proceed to discuss how the Eleventh Amendment applies to personal capacity suits against State officials.

 The Eleventh Amendment "prohibit[s federal courts] from hearing most suits brought against a state by citizens of that or any other state." *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935, 938 (1st Cir.1993). "[D]espite the absence of any express reference," the Eleventh Amendment "pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State." *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991).

 "[T]he government enjoys broad protection through the operation of the sovereign immunity doctrine." *Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir.2005). Often, a suit against a state official is considered a suit against the state, which triggers Eleventh Amendment immunity. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 24 (1st Cir.2007). Consequently, when as here, Plaintiff brings a suit against a Puerto Rico state official in his personal capacity rather than against the Commonwealth of Puerto Rico itself, the Court must ascertain whether the suit in reality is a suit against the Commonwealth of Puerto Rico. *Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir.2005).

 This analysis examines the conduct challenged and the relief sought. *Id.* When the actions of an officer do not conflict with the terms of his valid statutory authority, they are considered actions of the sovereign, which are protected by the Eleventh Amendment.[5] *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Furthermore, when the relief sought "would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act" the suit will be considered one against the sovereign. *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citations omitted).

---

4. This Court addressed whether Plaintiffs had proffered an adequate supervisor liability claim because Defendants argued that said claim was inadequate and, therefore, dismissal was warranted. Nonetheless, we recognize, as stated by Plaintiffs, that Defendants' liability may be based on more than their acts as supervisor of the Torre Sabana raid. (*See* Docket No. 90).

5. The doctrine of sovereign immunity does not apply when an officer's power is limited by statute and his actions go beyond those limitations. *Id.* at 689, 69 S.Ct. 1457; *see also Muirhead*, 427 F.3d at 19.

■■■■ The Eleventh Amendment does not apply in a suit against an officer to recover damages for the agent's personal actions, because the judgment sought will not require action by the sovereign or disturb the sovereign's property. *Larson,* 337 U.S. at 687, 69 S.Ct. 1457.[6] As such, the sovereign immunity doctrine does not bar personal-capacity suits against state officials because "it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity." *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, a citizen may seek monetary damages against a state officer for acts done under color of law, but only if the officer is sued in his or her individual capacity. *Id.*

■■■■ "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165, 105 S.Ct. 3099. "[T]o establish personal liability in a section 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166, 105 S.Ct. 3099. As just mentioned, taking as true all of Plaintiffs claims against Defendants leads us to assume for purposes of this analysis that Cartagena, while acting in his official capacity, deprived Cepeda of his federally protected rights. Plaintiff's damage claims are brought against Cartagena in his individual and personal capacity. As such, the sovereign immunity doctrine is inapplicable.

### 3. *Failure to Serve Summons*

Finally, Cartagena argues that the claims against him should be dismissed because he was never properly served with summons. Federal Rule of Civil Procedure 4(m) provides in pertinent part that:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In the present case, the Third Amended Complaint was filed on February 1, 2008. According to the aforementioned rule, Plaintiffs had until June 2, 2008 to serve summons. Thus, contrary to Plaintiffs' contention, the 120 day time-period to serve summons has expired. As of this date, there is no evidence on the record that Defendants have been served, even though summons were issued on May 8, 2008. Plaintiffs have only informed the Court that they are in the process of serving summons.

This Court recognizes that when summons were issued on May 8, 2008 the docket entry incorrectly stated that service was due by September 8, 2008. (Docket No. 89). However, said clerical mistake does not allow Plaintiffs to ignore the 120 day service of process deadline imposed by Federal Rule of Civil Procedure 4(m). Nonetheless, this Court will extend the deadline imposed by said rule and afford Plaintiffs until July 14, 2008 to file their service of process. As such, pursuant to Fed.R.Civ.P. 4(m), the Court is hereby giving notice to Plaintiffs that it intends to dismiss their claims against Cartagena and Martinez if proof of service of Defendants is not filed by July 21, 2008.

---

**6.** "If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign." *Larson,* 337 U.S. at 689, 69 S.Ct. 1457.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Dismiss. (Docket No. 80). Furthermore, the Court hereby orders Plaintiffs to file the service of process of Defendants by July 14, 2008. Failure to comply with this Order shall result in the dismissal of Plaintiffs' claims against Cartagena and Martinez.

IT IS SO ORDERED.