**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2020[*]
Decided September 3, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1601

| | |
|---|---|
| MADELYN P. GENSKOW, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-C-1474 |
| STACEY PREVOST, et al., *Defendants-Appellees*. | William C. Griesbach, *Judge*. |

**O R D E R**

Madelyn Genskow, an Oneida Nation elder, was forcibly removed by tribal police officers from a meeting of the tribe's governing body after she voiced her opinion that the scheduled agenda was not being followed. Genskow sued the four officers who carried her out, alleging that they violated her constitutional rights. The district court, concluding that the real party in interest was the tribe and not the officers, dismissed the suit based on the doctrine of tribal sovereign immunity. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

As set forth in the complaint, the allegations of which we assume are true, *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 618 (7th Cir. 2020), Genskow, a 77-year-old tribal member, was mistreated in front of 1,500 other members while attending a meeting of the General Tribal Council, the tribe's governing body. The meeting was held at a Radisson Hotel, a tribal property on the Oneida Nation Reservation. At some point, Genskow called for the discussion to return the meeting's scheduled topics. But instead of recognizing her (as the Nation's rules required him to do), the Tribal Chairman shut off Genskow's microphone and told four officers of the Oneida Police Department to remove her from the meeting. The officers each grabbed one of her limbs and carried her outside the building. Afterward, one of the officers issued "three bogus citations" for violating Wisconsin law, including one for trespassing. (The state prosecutor ultimately dropped the "sham charges" after reviewing video of the incident.)

Genskow sued the four tribal police officers for violating her right to participate in the General Tribal Council and for using excessive force to remove her from the meeting. The officers, she alleged, embarrassed and intimidated her to deter other tribal members from voicing concerns about issues of tribal governance. She sought damages for her pain and suffering as well as reimbursement of her legal expenses related to the citations. She also maintained that the Oneida Police Department cannot use its powers to enforce state law (i.e., by issuing state-law citations) to discourage tribal members from participating in tribal government on tribal land. Finally, anticipating a sovereign-immunity defense, she asserted that the Oneida Police Department had "waived tribal sovereignty" through a law-enforcement Service Agreement between the Nation and Brown County, Wisconsin—an agreement in which the Nation agreed to accept liability for the police department's acts and waive the Nation's sovereign immunity to enforce that liability.

The district court granted defendants' motion to dismiss on grounds of sovereign immunity. To the extent Genskow sued the defendants in their official capacities and sought relief for certain events that transpired at the meeting (the tribal chairman's refusal to recognize her, the silencing of her microphone, and the order to remove her), the Oneida Nation alone had the sovereignty to conduct the meeting of its governing body. And to the extent her suit targeted the defendants individually for injuring her while removing her, it too was barred because the Nation was the real party in interest and Genskow effectively was seeking to "interject the court into the internal workings of the Nation and its governing body." The court distinguished *Lewis v. Clarke*, 137 S. Ct.

1285, 1292 (2017), which held that a tribe's sovereign immunity did not extend to the individual liability of a tribal employee for a tort committed within the scope of his employment because the employee, and not the tribe, was the real party in interest. Unlike *Lewis*, the court explained, Genskow brought her suit as a tribal member over tribal events that took place on tribal land. As for the waiver of sovereign immunity set forth in the Nation's Service Agreement with Brown County, the court concluded that it did not apply here, since the agreement limited the enforcement of liability to the State's courts. Alternatively, the court determined, Genskow did not state a claim under 42 U.S.C. § 1983 because the tribal officers were acting not under color of state law, but rather in their official duties toward a tribal member on the tribe's own land. Further, Genskow had not alleged what the defendants did while removing her that was unreasonably excessive.

On appeal, Genskow reprises her argument that the tribe waived sovereign immunity through its law-enforcement agreement with the county. She also cites a state statute that holds a tribe liable for its law-enforcement officers' conduct within the scope of their employment. WIS. STAT. 165.92(3). A waiver of sovereign immunity, however, "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (citation and quotation marks omitted). Because the agreement specifically limits the tribe's liability to suits in Wisconsin state courts, an arrangement explicitly permitted under WIS. STAT. 165.92(3), the tribe did not waive its sovereign immunity and thereby consent to suits in federal court.

Alternatively, Genskow argues that her suit against the officers had to have been in their individual capacities, since the officers rather than the tribe are the real parties in interest. Despite this characterization, any assessment of the real party in interest requires courts to "determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 137 S. Ct. at 1291. Here, we agree with the district court that—with regard to the Tribal Chairman's directive to remove Genskow from the meeting—the tribe is the real party in interest because the officers' actions "in essence" were the tribe's own. *Id.* In carrying out the Chairman's directive, the officers were acting merely as "an arm or instrumentality" of the tribe. Any claim based on the decision to remove Genskow from the meeting is essentially a claim against the tribe and therefore barred by its sovereign immunity. *Id.*

It is a closer question, however, whether tribal sovereign immunity also bars Genskow's claims against the individual officers for using excessive force while removing her from the meeting. The Supreme Court held in *Lewis* that a tribe's

sovereign immunity did not apply to the individual liability of a tribal employee for acts taken in the scope of employment because the real party in interest was the employee, and not the tribe. 137 S. Ct. at 1292. But we agree with the district court that *Lewis* differs from this case in material ways. In *Lewis*, the action for damages was brought by a non-Indian for personal injuries sustained in a car accident on a state highway; this action, the Court emphasized, would not require involvement "by the sovereign or disturb the sovereign's property." *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)). Here, by contrast, a tribal member seeks to hold individual tribal officers liable for using excessive force while removing her from a meeting of the Nation's governing body on tribal land at the Tribal Chairman's direction. These facts reflect that the tribe must be the real party in interest. Allowing this suit to proceed would be "at odds with … tribal self-government" and "undermine the authority of tribal forums," which "have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personnel and property interests of both Indians and non-Indians." *Santa Clara Pueblo*, 436 U.S. at 64–65.

Because we conclude that all Genskow's claims are barred by sovereign immunity, we need not consider whether the complaint states a claim against the defendants for using excessive force in violation of the Fourth Amendment.

We have considered Genskow's other arguments, and none has merit.

AFFIRMED